GARDEN CHECK CASHING SERVICE, INC., Respondent, *v.* FIRST NATIONAL CITY BANK, Appellant.

First Department, March 8, 1966.

138

*Michael J. Aratingi* of counsel (*Herman E. Compter* with him on the brief; *Shearman & Sterling,* attorneys), for appellant.

*Samuel Gordon* of counsel (*Evelyn Frank* with him on the brief; *Blumberg, Singer, Ross & Gordon,* attorneys), for respondent.

Bastow, J. This action was brought to recover on a written instrument, more fully hereinafter described. Following trial in Civil Court, judgment was rendered for defendant (38 Misc 2d 623). Upon appeal Appellate Term reversed and granted judgment for plaintiff. The issues presented being novel, as is also the instrument, and the lower courts, both in.this case and others, having reached diverse results (*Rose Check Cashing Serv.* v. *Chemical Bank N. Y. Trust Co.,* 43 Misc 2d 679, affg. 40 Misc 2d 995; *Garden Check Cashing Serv.* v. *Chase Manhattan Bank,* 46 Misc 2d 163) we granted leave to appeal (24 A D 2d 734).

The proof is that any person, whether a customer or not, may purchase from defendant for 20 cents a check up to the amount of $250. The instrument when issued bears the name of

defendant, an identification number and the amount is machine-imbedded thereon. There is a line thereon for the date, another line prefixed by the words "Pay to the order of" and at the bottom two further lines prefixed by the words "signature" and "address" respectively. All of these four lines are blank when the instrument is delivered to the purchaser. In the upper right and left-hand corners of the instrument in comparatively small type appear the words "Personal Money Order." In the upper center underneath defendant's name appear in somewhat larger type the words "Register Check." The purchaser receives with the instrument another writing bearing the same number as the first instrument. At the top are printed the words "Customer's Record Copy of Register Check-Personal Money Order Drawn On First National City Bank." There are blank lines for the date and name of the payee. At the bottom thereof it is stated that the check is sold upon two conditions: (1) that the purchaser sign his name and address after filling in a date and the name of a payee and (2) that no request for a refund or to stop payment be made to the bank unless "this Record" is submitted therewith.

On April 13, 1962 one Higgins purchased from defendant a check in the amount of $130.37. On the same date he reported to the bank that the check had been lost and requested that payment be stopped. The name of a payee, according to Higgins, had not been filled in. Defendant stopped payment and five days later delivered to Higgins a cashier's check for the amount of $130.37.

It further appears that on April 13 one Walker presented the check in its blank form to plaintiff. Upon furnishing identification satisfactory to plaintiff, Walker inserted his name as payee, signed the check with his name and received the proceeds thereof less plaintiff's fee. Following deposit the check was returned to plaintiff by defendant with the notation that payment had been stopped.

The issue presented is whether, as plaintiff contends, the instrument is "akin to a cashier's check or a traveler's check" upon which defendant is primarily liable from the moment of issue with no right to stop payment thereon. Or, on the other hand, as defendant submits, is the instrument an unconditional order in writing addressed by the owner-drawer to the bank, requiring the latter to pay on demand the stated sum to order or to bearer with the ensuing right to the purchaser to stop payment?

"A check, strictly speaking, is a negotiable instrument, i.e., a bill of exchange drawn on a bank payable on demand".

(*Irving Trust Co.* v. *Leff*, 253 N. Y. 359, 362.) A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand a sum certain to order or to bearer. (Negotiable Instruments Law, § 210; Uniform Commercial Code, § 3–104, subd. [2], par. [a].) Such a bill becomes a check when drawn on a bank payable on demand. (Negotiable Instruments Law, § 321; Uniform Commercial Code, § 3–104, subd. [2], par. [b].)

"A cashier's check issued by a bank, however, is not an ordinary draft. The latter is a bill of exchange payable on demand. It is an order upon a third party purporting to be drawn upon a deposit of funds. * * * A cashier's check is of a very different character. It is the primary obligation of the bank which issues it * * * and constitutes its written promise to pay upon demand * * *. It has been said that a cashier's check is a bill of exchange drawn by a bank upon itself, accepted in advance by the very act of issuance." (*Matter of Bank of U. S.*, 243 App. Div. 287, 291.)

If it could be found that the instrument before us was in substance a cashier's check drawn by defendant upon itself it would be of necessity a nonnegotiable instrument. To be negotiable an instrument must be signed by the drawer (Negotiable Instruments Law, § 20; Uniform Commercial Code, § 3–104, subd. [1], par. [a]). (Cf. *Bobrick* v. *Second Nat. Bank*, 175 App. Div. 550, 552, affd. 224 N. Y. 637.) Here, no officer of defendant signed the instrument and there was no place thereon for such a signature.

Similarly, the contention is advanced that the instrument herein is in the nature of a traveler's check. An examination of the form of the latter (Modern Legal Forms, § 1393) reveals the dissimilarity. Such a check requires, as does the cashier's check, the signature of the issuer thereof. (Cf. *Sullivan* v. *Knauth*, 220 N. Y. 216, 222.)

It is unnecessary to determine what the impact would be upon plaintiff's cause of action against defendant if it should be determined that the instrument was nonnegotiable (cf. Nonnegotiable Instruments, 11 Syracuse L. Rev. 13–26; Uniform Commercial Code, § 3–805). Any attempt to analogize the instrument herein with a cashier's or traveler's check fails.

The relationship between defendant and the purchaser of the check is reasonably clear. The latter deposited with defendant a sum of money and received therefor a writing in which defendant plainly appeared as drawee. The novel feature of the instrument was that the prospective names of drawer and payee were

blank. Defendant was not primarily liable thereon (Negotiable Instruments Law, §§ 20, 37; Uniform Commercial Code, §§ 3–104, subd. [1], par. [a]; 3–401, subd. [1]); and such liability did not arise until there was certification or acceptance of the instrument. (Negotiable Instruments Law, §§ 220, 325; Uniform Commercial Code, §§ 3–409, subd. [1]; 3–410, 3–411.) (See, generally, 41 N. Y. Jur., Negotiable Instruments, §§ 374–375.)

We see small difference between the present transaction and one where a person deposits with a bank a sum of money and receives a quantity of blank checks. The obvious difference is that here a single deposit was made and a single blank check received with the amount of the deposit inserted therein. Thereafter the procedure followed the normal and customary pattern — the purchaser filled in the name of a payee, signed his name and address and delivered the instrument. Thereupon it became a negotiable instrument subject to all the rights and provisions of the then Negotiable Instruments Law. Defendant for its own purposes may have coined the words "Personal Money Order" and "Register Check" appearing on the instrument but these words in no way altered the applicable legal principles. The purchaser under his contract with defendant was the sole person who might draw on the fund and he had the clear right to stop payment prior to acceptance by the bank (*American Defense Soc.* v. *Sherman Nat. Bank,* 225 N. Y. 506) — a right since accorded a bank's customer by statute (Uniform Commercial Code, § 4–403). This conclusion is fortified by decisions in another jurisdiction where, unlike this case, a legal "bank money order" signed by an officer of the issuing bank was held to be the equivalent of a cashier's check. (*State ex rel. Babcock* v. *Perkins,* 165 Ohio St. 185; *Cross* v. *Exchange Bank Co.,* 110 Ohio App. 219.)

We attach no legal significance, so far as plaintiff's right to recover is concerned, to the customer's record copy of the transaction which provided, among other things, that such must be submitted with a request to stop payment. The proof seems to be that this copy was delivered to plaintiff by the person who cashed the check.

The general principle is well established "that notwithstanding the agreement which bankers make with their customers, to pay their checks to the amount standing to their credit, a check-holder can take no benefit from this agreement, and that a check does not operate as a transfer, or assignment of any part of the debt, or create a lien at law or in equity upon the deposit." (*Ætna Nat. Bank* v. *Fourth Nat. Bank,* 46 N. Y. 82, 87.) The drawee enters into no contract relations with the

holder unless and until the instrument is accepted. (11 Am. Jur. 2d, Bills and Notes, § 593; *Henderson* v. *Lincoln Rochester Trust Co.*, 303 N. Y. 27, 31; Negotiable Instruments Law, §§ 325, 220; Uniform Commercial Code, §§ 3-409, 3-410, 3-411.)

We conclude that Higgins, the purchaser of the instrument, effectively stopped payment thereon prior to its presentation to defendant by plaintiff. It follows that no cause of action has been established against defendant.

The determination of Appellate Term should be reversed on the law and on the facts and the judgment of Civil Court reinstated, without costs and without disbursements.

Botein, P. J., Breitel, Rabin and Eager, JJ., concur.

Determination of the Appellate Term unanimously reversed, on the law and on the facts, without costs and without disbursements, and the judgment of the Civil Court reinstated.