301 So.2d 707 (1974)
HONG KONG IMPORTERS, INC.
v.
AMERICAN EXPRESS COMPANY.
No. 6395.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1974.
Von Hoene & Garner, William L. Von Hoene, New Orleans, for plaintiff-appellee.
Lemle, Kelleher, Kohlmeyer & Matthews, Paul B. Deal, New Orleans, for defendant-appellant.
Before REDMANN, GULOTTA and MORIAL, JJ.
MORIAL, Judge.
This case, on appeal by the defendant from an adverse judgment, is one of first impression and presents a novel and apparently unprecedented factual situation, albeit governed by well established legal and statutory provisions, which are determinative of this cause.
*708 On the testimony and an uncontradicted affidavit the undisputed facts are as follows:
A person named Cooper, on or about April 25, 1972 met Larry Crabbe, a jewelry salesman and an agent of plaintiff, in a Shreveport, Louisiana, motel room where a sale was consummated. Cooper purchased and took delivery of jewelry valued at $3,925.00 and paid for it with forty (40) $100.00 American Express Company (AEC) Money Orders. Crabbe gave Cooper $75.00 cash in change. On April 27 and 28, 1972, Crabbe presented twenty (20) of the money orders on each of the two (2) days to the National American Bank of New Orleans (NAB) in return for two (2) cashier's checks in the amount of $2,000.00 each. When accepted by Crabbe and presented by him to NAB the money orders appeared as shown with the exception of "National American Bank of N. O. [,] Int. Trade Mart [,] New Orleans, La. 70130," which was stamped on each by the teller with the approval of an officer of NAB after viewing the instruments and talking with the teller. Also absent from the face of the money orders at that time were the words "Void" and "Reported Stolen."

The back of each money order appeared as follows with the exception of the words "Hong Kong" which were written in the same location on each by the NAB teller for identification of the party from whom the instruments were received.

*709 Upon presentation by NAB, American Express refused payment because the money orders had been stolen and returned them to NAB. Hong Kong was notified of AEC's refusal to pay prior to the negotiation of the two (2) cashier's checks, which were returned to NAB.
Plaintiff argues that it is a holder in due course and therefore entitled to rights granted by LSA-R.S. 7:57.
Defendant contends: (1) it has no liability because the money orders were stolen and had not been issued by it for value; (2) plaintiff is not a holder in due course because (a) the money orders were not "complete and regular" on the face of each; (b) the money orders were not taken by plaintiff in good faith and for value; (c) the acceptance of the blank money orders under the circumstances was a taking in bad faith within LSA-R.S. 7:56; (3) the "NOTICE" on the reverse prevents the money orders from being negotiable because such notice is restrictive of the requirement of negotiability that the instrument contain an unconditional promise or order to pay a sum certain in money. LSA-R.S. 7:1.
One question must be answered for a proper disposition of this appeal. Is one who accepts for value, without knowledge that they are stolen, money orders blank as to the payee, sender's name and address, and date, a holder in due course? We answer in the negative. Accordingly it is unnecessary to dispose of defendants' contentions numbered 2(b) and 2(c).
We find no definition of "money order" in our Negotiable Instruments Law, LSA-R.S. 7:1-7:195. The term, "money order," may encompass non-negotiable as well as negotiable instruments.[1] It may be issued by a governmental agency,[2] a bank,[3], or a private person or entity authorized to issue same.[4] The essential characteristic common to all these various types of money orders is that it is purchased for the purpose of paying a debt or to transmit funds upon the credit of the issuer of the money order. At the time of its purchase, the purchaser pays to the issuer the principal amount of the money order and usually also pays a fee to the issuer for the issuance or the transmission of the principal amount represented by it. No such consideration was paid by Cooper or any prior holder to cause the money orders in question to issue.
*710 The instruments before us have the characteristics of a check and a note.[5] They also have similar characteristics of a bank money order and a personal money order.[6] Whatever designation is given to the instruments they are negotiable instruments and governed by the Negotiable Instruments Law. LSA-R.S. 7:1-7:195.
The language, "KNOW YOUR ENDORSER CASH ONLY IF RECOURSE IS AVAILABLE" on the face of each instrument and the "NOTICE" on the reverse are insufficient to convert the instruments into a conditional promise to pay. That language on the face and reverse of the instrument is simply a warning to one who cashes the money order that he should have recourse against a payee-endorser and any subsequent endorsers. It can be construed as nothing more than an abortive attempt by the issuer to restrict negotiability. Such language is out of harmony with LSA-R.S. 7:47 which provides that "A [a]n instrument negotiable in its origin continues to be negotiable until it has been restrictively endorsed or discharged by payment or otherwise." (emphasis supplied)
There is agreement that Larry Crabbe, the agent of Hong Kong accepted the money orders in blank as to the payee. Under LSA-R.S. 7:1 to be negotiable an instrument must be payable to order or to bearer, and it is not subject to any dispute that, when an instrument is payable to order, the payee must be named. LSA-R.S. 7:8. Where no payee is named and the instrument reads "pay to the order of___________" the instrument is incomplete and is not bearer paper. See 24 Tulane L.Rev. 485; Moore v. Vaughn et al., 167 Miss. 758, 150 So. 372 (1933). cf. UCC § 3-110, et seq.[7]
A holder in due course is a holder who has taken the instrument complete and regular on its face. LSA-R.S. 7:52. However, if a person seeking recovery is not a holder in due course, the instrument is subject to the same defenses as if it were a non-negotiable instrument. LSA-R.S. 7:58.
The plaintiff argues that the money orders were complete and regular on their face. To support this contention, plaintiff urges as a basis the testimony of Larry Crabbe that he considered the instruments to be complete and regular when he accepted them for value and the testimony of the Assistant Manager of NAB, Mr. Glaser, that money orders similar to the ones in question have been accepted and negotiated by NAB on numerous previous occasions and paid by the defendant. However, neither Larry Crabbe nor Hong Kong ever attained the status of holder in due course, Crabbe having accepted delivery of the *711 money orders from the transferor incomplete.
It is irrefutable that money orders by usage in the community have attained the prestige of representing money and that the general public treats such instruments as cash; nevertheless, they are not cash but negotiable instruments. However, their negotiability does not supply the requirements mandatorily fixed by LSA-R.S. 7:52 for a transferee to become a holder in due course and do not avail to render them complete and regular on their face so that Hong Kong, who through Crabbe, accepted the instruments, blank as to payee, can now be declared to be a holder in due course.
LSA-R.S. 7:14 provides in part, "* * * In order, however, that any such instrument [blank paper] when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given * * *."
It is clear from the express language of LSA-R.S. 7:14 when read with the definition of a holder in due course in LSA-R.S. 7:52 which states, "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular on its face; * * *" that a transferee of an instrument signed in blank or in an incomplete state is not a holder in due course. Crabbe took the money orders with the infirmity thereon and was put on inquiry of Cooper from whom he accepted for value.
We are not unmindful that negotiable instruments, of one kind or another, are absolutely essential, in this day, to businesses of all kinds; but where a person accepts paper with patent defects thereon, or incomplete, he stands charged with knowledge of such defects and irregularities apparent on the face of the paper and he is not a holder in due course. He is put upon inquiry to ascertain the facts. The defense of lack of consideration by virtue of the theft was available. LSA-R.S. 7:28; 7:58. See Southern Discount Co. v. Newbrough, 236 So.2d 273 (La.App.4th Cir. 1970); Paletou v. Sobel, 185 So.2d 95 (La.App.4th Cir. 1966).
The result we reach in applying the statutory rules of the Negotiable Instruments Law R.S. 7:14 and 7:52 might appear harsh, but is sound. There is no sufficient reason for encouraging the circulation of incomplete commercial paper to make it desirable to protect even an innocent purchaser for value who accepts it incomplete.
For the foregoing reasons the judgment of the district court is reversed at plaintiff's costs.
Reversed.
NOTES
[1] See, e. g., Garden Check Cashing Service, Inc. v. First National City Bank (1966), 25 A.D.2d 137, 267 N.Y.S.2d 698, aff'd. 18 N.Y.2d 941, 277 N.Y.S.2d 141, 223 N.E.2d 566; Nation-Wide Check Corp. v. Banks (D.C.Ct.App.1969), 260 A.2d 367; Bolognesi v. United States (2d Cir. 1911), 189 F. 335, Cert. den. 223 U.S. 726, 32 S.Ct. 525, 56 L.Ed. 632.
[2] E. g., Post Office or now the United States Postal Service. (39 U.S.C.A. § 5101 et seq.; Pub.L. 91-375 § 5(f). The issuance of postal money orders is a governmental function rather than a commercial function, therefore, postal money orders are not negotiable instruments subject to the defenses permitted to bona fide holders for value by the law merchant. 39 U.S.C. § 5104 provides, * * * more than one endorsement renders an [a postal money] order invalid. * * * Thus a postal money order is unlike the ordinary negotiable instrument covered by modern codes and statutes. See United States v. First National Bank of Boston, 263 F.Supp. 298 (D.C.1967).
[3] A bank may issue a money order either in the form of a "bank money order" or a "personal money order." (See: 2 Anderson, Uniform Commercial Code (1971) § 3-104:20, pp. 613-614; Brady on Bank Checks (4th ed. by Bailey, 1969) § 1.7, pp. 10-12; Clark & Squillante, The Law of Bank Deposits, Collections and Credit Cards (1970) pp. 51-56.)
[4] See, e. g., The Sale of Checks Act. LSA-R.S. 6:1031 et seq. "LSA-R.S. 6:1032 states: "* * * (c) `Check' means any check, draft, money order, personal money order or other instrument for the transmission or payment of money.

"(d) `Personal money order' means any instrument for the transmission or payment of money in relation to which the purchaser or remitter appoints or purports to appoint the seller thereof as his agent for the receipt, transmission or handling of money, whether such instrument is signed by the seller or by the purchaser or remitter or some other person. * * *"
[5] Like a "note" a money order is an unconditional promise to pay another and like a "check" is drawn on a company (bank) payable on demand. See LSA 7:185 et seq. Like a cashier's check it is the primary obligation of the issuer (bank) and constitutes its written promise to pay upon demand.
[6] "Bank money orders" are forms of money orders issued and sold by banks, as distinguished from postal and express money orders. They are practically a modified form of cashier's checks, and unlike postal money orders may be endorsed any number of times. Such bank money orders are obligations of the issuing bank and they are often signed by an officer of the issuing bank.

"Personal money orders" generally have a resemblance to ordinary checks and are issued with unfilled blanks for the name of the payee, the date and signature of the purchaser (with his address). Only the amount is filled out at the time of issuance and that is often done, as here, by checkwriter impression. A personal money order is not signed in any place by a representative of the bank and, on its face, more nearly resembles an ordinary check than a cashier's check or officer's check. See Bailey, Bank Personal Money Orders as Bank Obligations, 81 B.L.J. 669.
[7] Acts 1974, No. 92, § 1. Enacted subsequent to this litigation. For a discussion of the cited sections of the Uniform Commercial Code see Anderson, Uniform Commercial Code (1971) § 3-110 et seq. pp. 663-674.