OPINION OF THE COURT
Bernard Klieger, J.
Time and again and in shop after shop throughout this country, one is apprised by notices that personal checks will not be accepted; only certified checks or money orders.
It is the common belief and usage among merchants that the party entitled to sign and deliver a money order issued by a bank is authorized to bind that bank’s credit to the limit expressed in the money order. Within that limit and relying on it, merchants deliver goods and services are rendered. We take judicial notice of that belief and usage, as authorized by the Court of Appeals in Strasbourger v Leerbourger (233 NY 55, 58): "We may take notice of ordinary business usage”.
One Uda Udoh visited the defendant bank on March 8, 1977 and purchased a money order in the amount of $286. The defendant had its name imprinted on the document as well as the following legend: "personal money order Not Valid Over $1,000.00”.
Udoh signed the money order and delivered it to plaintiff, *170 which does business as Ridge Auto Collision. The latter accepted the document and released to Udoh an automobile upon which it had a lien in the amount involved for towing and storage services.
Udoh returned to the bank, ordered that payment be stopped on the money order and received from the bank all of the funds he had previously given to it for the right to put the money order into circulation, except the bank’s fees.
The plaintiff businessman deposited the money order in its bank, and the defendant refused to pay it on the ground that payment had been stopped.
The plaintiff seeks the face amount of the money order from the bank, which resists on the theory that a money order is no more than a check, which may be stopped without imposing liability on the bank upon which it is drawn, and cites as authority Garden Check Cashing Serv. v First Nat. City Bank (25 AD2d 137, affd 18 NY2d 941). As the Appellate Division, First Department, pointed out, prior to the decision in that case the issues with respect to money orders were novel, and lower courts had reached diverse results.
The evidence in that case did not establish that the party who delivered the money order was in fact authorized to bind the issuing bank. The purchaser of the money order in Garden Check Cashing Serv. was a person named Higgins, who reported to the bank on the very date of purchase that the money order was lost and requested that payment be stopped. Thereafter, one Walker presented the money order to plaintiff Check Cashing Service and received the proceeds. Certainly, under such circumstances, Walker could not be held to have had authority to bind the issuing bank.
Nor did the court in that case consider the custom and usage of merchants with respect to money orders. The Uniform Commercial Code apparently did not directly contemplate the use of money orders and made no specific provision for them. Indeed, they have been characterized as "mavericks” (Personal Money Orders and Teller’s Checks: Mavericks Under the UCC, 67 Col L Rev 524).
That lacuna may be closed by applying the principles of the law merchant (Uniform Commercial Code, § 1-103). The lex mercatoria is the prestatutory and nonstatutory law which governs instruments for the payment of money, and it arose from the custom and practice of merchants.
*171 "Since the law merchant determines rights and obligations of parties to negotiable paper in the absence of a governing statute, since the law merchant is still a vital force and is the product of custom and usage, and since one of the underlying purposes and policies of the Commercial Code is to permit the continued expansion of commercial practices through custom, usage and agreement of the parties, parties may, in accordance with the definitions and requirements specifically laid down in the Commercial Code, establish rights and obligations in connection with commercial paper by custom or usage. A course of dealing between parties, and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware, give particular meaning to and supplement or qualify terms of an agreement.” (41 NY Jur, Negotiable Instruments, § 37.)
One of the meanings given by merchants to money orders issued by banks is that the persons who purchase them are authorized to pledge the banks’ credit pro tanto. Such a custom must be afforded full recognition.
The defendant also claims that it is absolved from liability by subdivision (1) of section 3-401 of the Uniform Commercial Code which states "No person is liable on an instrument unless his signature appears thereon”. Subdivision (2) of that same section provides that a signature may be "any word or mark”. The authenticity of the instrument involved here has been conceded, and the issuing of the money order with the bank’s printed name evidences the defendant’s intent to be bound thereby.
Nothing in the Uniform Commercial Code is intended to prevent liability arising by way of estoppel. The defendant bank has catered to the belief among merchants that money orders carry different connotations from checks. While claiming the document is to be treated as a check, the defendant persisted in issuing it as a money order. To add to the illusion, it provided the phrase, "Not Valid Over $1,000.00”.
That phrase can have no meaning other than the authority of the party signing and delivering the money order is limited to $1,000. Such a phrase does not ordinarily appear on a check except where it is intended to give notice of the limitations of authority of the person signing and delivering it. A party who signs an instrument for himself need give no notice of his own limitations; such a notice may be of value only where a party other than the signer is to be bound.
*172 The expression of a limitation of authority is a concession that some authority to bind the bank exists. The plaintiff had the right to rely on that concession, as it did, within the boundaries noted.
"Another reason is that it presents a proper case for the application of the legal maxim that, where one of two innocent parties must sustain a loss from the fraud of a third, such loss shall fall upon the one, if either, whose act has enabled such fraud to be committed.” (Moore v Metropolitan Nat. Bank, 55 NY 41, 47.)
The plaintiff is awarded judgment in the sum of $286 with interest from March 8, 1977.