# SEQUOYAH STATE BANK *v.* UNION NATIONAL BANK

81-68                     621 S.W. 2d 683

Supreme Court of Arkansas
Opinion delivered October 5, 1981
[Rehearing denied November 9, 1982.]

2

*Bryan & Fitzhugh*, for appellant.

*Smith & Nixon*, by: *W. R. Nixon, Jr.*, for appellee.

RICHARD B. ADKISSON, Chief Justice. The only issue in this case is whether Union Bank by its own initiative can stop payment on a personal money order it had issued in exchange for a hot check and, thereby, cause Sequoyah Bank, a holder in due course, to bear the loss. Under these circumstances the loss must be borne by Union Bank which issued the negotiable instrument to be circulated in commerce.

We do not decide the question of whether the purchaser may stop payment, but we do hold that after the sale of a personal money order, the issuing bank cannot stop payment on the instrument.

A personal money order is issued with unfilled blanks for the name of the payee, the date, and the signature of the purchaser. Only the amount is filled out at the time of issue, usually by checkwriter impression as was done in this case.

The Uniform Commercial Code apparently did not directly contemplate the use of money orders and made no specific provision for them. *Mirabile* v. *Udoh*, 399 N.Y.S. 2d

869 (1977). It was recognized in *Mirabile* that it is the custom and practice of the business community to accept personal money orders as a pledge of the issuing bank's credit. We may consider this custom and practice in construing the legal effect of such instruments. *See* Ark. Stat. Ann. § 85-1-103 (Add. 1961).

Appellee relies on the cases of *Garden Check Cashing Service, Inc.* v. *First National City Bank,* 25 A.D. 2d 137, 267 N.Y.S. 2d 698 (1966), aff'd. 18 N.Y. 2d 941, 223 N.E. 2d 566, 277 N.Y.S. 2d 141 (1966) and *Krom* v. *Chemical Bank New York Trust Co.,* 313 N.Y.S. 2d 810 (1970), rev'd. 329 N.Y.S. 2d 91 (A.D. 1972) which held that a purchaser of a personal money order may stop payment on it. However, the only cited case to specifically address the issue of whether the issuing bank, on its own initiative, may stop payment on a personal money order is *Rose Check Cashing Service, Inc.* v. *Chemical Bank N.Y. Trust Co.,* 244 N.Y.S. 2d 474, 477 (1963). In holding that the issuing bank could not stop payment and therefore must suffer the loss the court stated:

> All of these differences between the instrument at issue and an ordinary check would seem to indicate that the bank would honor the order to pay no matter who signed the face of the instrument, assuming of course an otherwise valid negotiation of the instrument.
>
> . . . .
>
> In the instrument in suit, the drawer *purchases* the instrument from the bank. The transaction is in the nature of a sale. No deposit is created. The funds to pay the instrument, immediately come within the bank's exclusive control and ownership. . . .
>
> The bank's contention that the instrument is a check is inconsistent with its own acts. The bank (drawee) stamped "Stop Payment" on the instrument in suit on its own order. Nowhere in the Negotiable Instruments Law is there any provision that a drawee [bank] may "Stop Payment" of a check unless ordered to do so by the drawer.

4

Appellee also denies liability on the instrument based upon Ark. Stat. Ann. § 85-3-401 (1) which states that "No person is liable on an instrument unless his signature appears thereon." Subdivision (2) of this same section provides that a signature may be "any work or mark used in lieu of a written signature." The authenticity of the instrument involved here is not in question. The issuance of the money order with the bank's printed name evidences the appellee's intent to be bound thereby. *Mirabile, supra.*

Appellee also relies on Ark. Stat. Ann. § 85-3-409 for the proposition that it is not liable on the personal money order since it did not accept it. In our opinion, however, the appellee accepted the instrument in advance by the act of its issuance. *Rose Check Cashing Service, Inc.* v. *Chemical Bank New York Trust Co.*, 252 N.Y.S. 2d 100 (1964).

The personal money order constituted an obligation of Union from the moment of its sale and issuance. The fact that Union was frustrated in retaining the funds because instead of cash it accepted a check drawn on insufficient funds is no reason to hold otherwise. We note by analogy that the Uniform Commercial Code on sales, Ark. Stat. Ann. § 85-2-403 (1) (b), provides that a purchaser of goods, who takes delivery in exchange for a check which is later dishonored, transfers good title to the goods.

Union placed the personal money order in commerce for a consideration it accepted as adequate and was, thereafter, liable on it. Banks are not allowed to stop payment on their depositor's checks and certainly should not be allowed to stop payment on personal money orders. *See* Note, *PERSONAL MONEY ORDERS AND TELLER'S CHECKS: MAVERICKS UNDER THE UCC*, 67 Colum. L. Rev. 524 (1967).

Reversed.

HOLT, DUDLEY, and HAYS, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. This case involves a personal money order, not a bank money order,

not a certificate of deposit and not a certified check. A personal money order is for the convenience of anyone who does not have an ordinary checking account and needs a safe, inexpensive and readily acceptable means of transferring funds. The bank simply sells to the individual a check-sized form which has the amount impressed into the face of the paper, an identification number and the name of the issuing bank. No authorized representative of the bank signs the instrument. When the purchaser of the instrument decides to pass it, he dates it, enters the name of the payee and signs the instrument.

Ark. Stat. Ann. § 85-3-104 (1) (a) (Add. 1961) requires that a writing be signed by the drawer or maker in order to be negotiable. Any item which is an order to pay is considered a "draft" and any draft drawn on a bank and payable on demand is a "check." § 85-3-104 (2) (a), (b). Since the only signature on a personal money order is that of the purchaser, since the instrument takes the form of an order to pay, and since it is drawn on a bank and payable on demand, it is clearly within the classification of a check. The absence of the bank's signature as a "maker" and the absence of any express "undertaking" to pay by the bank, § 85-3-102 (1) (c) and § 85-3-104 (2) (d) preclude a finding that the instrument is a note. Aside from "draft," "check" and "note" the only other form of negotiable instrument recognized by the Uniform Commercial Code is a "certificate of deposit" and that requires an acknowledgement that the bank will repay it. § 85-3-104 (2) (c). Under these code provisions a personal money order must be classified as a check. There is no other code classification of negotiable commercial paper. § 85-3-104. For the sake of clarity in the law of commercial paper this personal money order should be classified as a check.

However, the matter of classification is not nearly as important as the issue of liability. No authorized representative of appellee bank signed this check. Section 85-3-401 states: *"No person is liable on an instrument unless his signature appears thereon."* Section 85-3-409 (1) states that a check or other draft is not an assignment of funds held by the drawee (appellee Union Bank) and *the drawee is not liable until it accepts the check or draft.* Appellee did not accept

this instrument. It stopped payment. The language of these statutes, a part of the Uniform Commercial Code, is unmistakable.

The majority opinion holds:

> The personal money order constituted an obligation of Union from the moment of its sale and issuance.

I respectfully submit that statement is supported by absolutely no authority and it creates an unnecessary legal quagmire. Assume that a purchaser of a personal money order has not filled in the name of the payee or has not signed the check and it is lost or stolen. The purchaser then wants to stop payment before it is negotiated to a third party. The majority has stated that it was an obligation of the bank from the moment of sale and issuance. Fairness and logic dictate that the purchaser should not be allowed to stop payment and leave the bank liable. Yet, § 85-4-403 (1) provides:

> Customer's right to stop payment — Burden of proof of loss. A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in Section 4-303.

Comment 4 to this statute makes it abundantly clear that personal money orders are intended to be covered by this broad language.

One of the three explanations given for the holding is:

> The issuance of the money order with the bank's printed name evidences the appellee's intent to be bound thereby.

That notion will echo because the name of the drawee bank is printed on every ordinary check in circulation.

The other two explanations are that banks should not be allowed to stop payment and business custom. Both explanations are dead letters. Assume, for the sake of argument only, that banks should not be allowed to stop payment. That occurrence takes place after the sale and issuance of the instrument. The majority has held that liability attached upon issuance. Therefore this subsequent event logically cannot have any effect on liability. It very simply is not a reason for a decision that liability attached at the time of issuance. Business custom is not proven. There is not one single word in the transcript or abstract about business custom. Even if this defense had been proven it would be an estoppel defense, or a defense which accrues after the sale and, once again, it would not be a reason for a decision that liability attached at the time of issuance.

The master purpose of the Uniform Commercial Code is to clarify the law governing commercial transactions. The tragedy of this case is that both the purpose and the Code are emaciated for no reason.

I dissent.

I am authorized to state that Mr. Justice Holt and Mr. Justice Hays join in this opinion.