**INTERFIRST BANK CARROLLTON, formerly Dallas County State Bank, Appellant,**

v.

**NORTHPARK NATIONAL BANK OF DALLAS, Appellee.**

No. 08–83–00129–CV.

Court of Appeals of Texas, El Paso.

April 11, 1984.

William H. Shields, Beverly A. Martin, McCracken, Shields & Taylor, Carrollton, for appellant.

Nathan Allen, Jr., Lindy D. Jones, Moseley, Jones, Allen & Fuquay, Dallas, for appellee.

Before STEPHEN F. PRESLAR, C.J., and OSBORN and SCHULTE, JJ.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This is a negotiable instrument case involving interpretation of a negotiable instrument, a Personal Money Order issued by Defendant/Appellant. We affirm the judgment for the Plaintiff.

A Personal Money Order was purchased from Defendant with a forged check. Defendant subsequently stopped payment on the money order and refused to accept and pay it when presented by the Plaintiff. The facts are not in dispute. Both parties moved for a summary judgment, and the trial court denied the Defendant's summary judgment and granted that of the Plaintiff. Involved is the construction of the instrument, and the question presented is whether the Defendant issuing bank can stop payment on the instrument. It is a case of first impression in Texas.

The instrument involved is reproduced below and as can be seen it is on a form of the Dallas County State Bank and clearly labeled a "PERSONAL MONEY ORDER." The payment portion of the instrument "Dallas County State Bank 500dols00cts" is imprinted on the instrument by a check-writer. The instrument is issued with unfilled blanks for the name of the payee, the date and the signature of the purchaser. These things are completed at the time the purchaser negotiates the instrument.

The case law on construing personal money orders is rather limited and is divided between the New York holdings and the Arkansas holdings, with New York holding that they are in the nature of checks and can be the subject of stop payment orders. Under the Arkansas decision, they are construed as bank money orders and payment cannot be stopped by the bank. *Garden Check Cashing Service, Inc. v. First National City Bank*, 25 A.D.2d 137, 267 N.Y. S.2d 698 (New York App.Div.1966), affirmed 18 N.Y.2d 941, 277 N.Y.S.2d 141, 223 N.E.2d 566, is the principal New York case espousing the rule that payment can be stopped. It differs from our case in that the purchaser of the personal money order reported that it had been lost and requested the bank to stop payment. In holding that the purchaser of a personal money order had the right to stop payment prior to acceptance by the issuing bank, the New York Appellate Court likened the transaction to one where a person deposits with a bank a sum of money and receives a quantity of blank checks. 267 N.Y.S.2d at 702. The court also found it significant that no officer of the issuing bank signed the instrument and that there was no designated place on the instrument to even put such signature. In keeping with the New York holding is the Washington State case of *State v. LaRue*, 5 Wash.App. 299, 487 P.2d 255 (1971). The Washington court's interpretation of the *Garden* holding is:

> [I]t was held that a personal money order is essentially the equivalent of a personal check. The rationale of the decision is that the drawer (purchaser) of a money order does not purchase the drawee's (the bank's) credit. He merely deposits a sum of money with the drawee against which he may draw by written order. This view of the legal nature of a personal money order finds support in the provisions of the Uniform Commercial Code. A personal money order, in all respects, fulfills the definition of a "draft" under the provisions of RCW 62A.3–104.

The interested reader will find the *LaRue* case instructive as to the character of a personal money order for the court quotes at length from 85 *The Banking Law Journal* 95 (1968) on the nature, history and rationale of personal money orders.

We think a personal money order more resembles a bank money order than any other instrument. In *Munn's Encyclopedia of Banking & Finance* (1962 Revision), a bank money order is defined as:

> A form of money order issued and sold by banks, as distinguished from postal and express money orders. They are practically a modified form of cashier's check, and unlike postal money orders may be endorsed any number of times
> . . . .

In the only Texas case dealing with bank money orders, it is held that "[c]ourts which have dealt with 'bank money orders' have treated them as instruments 'analogous to cashier's check or bank obligations.' 81 *Banking Law Journal* 669, 674 (1965), and we will treat them accordingly." *First National Bank of Mineola, Texas v. Farmers & Merchants State Bank of Athens*, 417 S.W.2d 317 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.).

We are of the opinion that the personal money order is analogous to a bank money order; that it should be treated as a cashier's check. A cashier's check is held to be a bill of exchange drawn by a bank on itself and accepted in advance by act of its issuance and not subject to countermand by either its purchaser or the issuing bank. *Wertz v. Richardson Heights Bank and Trust*, 495 S.W.2d 572 (Tex. 1973); *Bank of El Paso v. Powell*, 550 S.W.2d 383 (Tex.Civ.App.—El Paso 1977, no writ). Under Section 4.303 of the Uniform Commercial Code, it is not subject to a stop order after acceptance.

The personal money order fits the definition above of a bank money order, the only difference being in name and lack of a signature. It is issued by the bank for consideration paid directly to it. It differs from a check or draft drawn on money on deposit with the bank by its customer, being not payable from a customer's account but from bank funds. It is in the nature of

a sale and once sold no individual is concerned with the obligations it creates, only the bank. This Personal Money Order was complete for payment when sold and placed in the channels of commerce and represented to be worth $500.00. The lack of a signature is not controlling, for the bank elected to sell the money order in the form which it did, and it selected in lieu of a signature the checkwriting imprint of "Dallas County State Bank 500dols00cts." Section 3.401(a) Tex.Bus. & Com.Code Ann. (Vernon 1968) provides that "[n]o person is liable on an instrument unless his signature appears thereon." But it also provides "[a] signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature." The official comment accompanying these provisions elaborates on the form of the signature: "2. A signature may be handwritten, typed, printed or made in any manner." The manner selected by the bank was the checkwriter inscription. This was something done at the time of sale and is in addition to the regular printed name of the bank on the money order. We think this satisfies Section 3.401(a).

A case directly in point is *Sequoyah State Bank v. Union National Bank of Little Rock*, 274 Ark. 1, 621 S.W.2d 683 (1981). A personal money order was issued in exchange for a check which turned out to be worthless and the bank attempted to stop payment on the money order. The Arkansas Supreme Court answered many of the same questions presented by the case before us and held that after sale of the personal money order the issuing bank, on its own initiative, could not stop payment on the instrument. Notice was taken of the fact that the Uniform Commercial Code apparently did not contemplate use of money orders and had made no specific provision for them. *Mirabile v. Udoh*, 92 Misc.2d 168, 399 N.Y.S.2d 869 (1977), was cited for the proposition that it is the custom and practice of the business community to accept personal money orders as a pledge of the issuing bank's credit and that that custom could be considered in constru-

ing the legal effects of such instruments. The Arkansas court also answered the question of liability on an instrument without the signature, noting that the same section of the U.C.C. provides that a signature may be any word or mark used in lieu of a written signature and that the issuance of the money order with the bank's printed name evidences its intent to be bound thereby. Also overruled was the contention that the bank was not liable on the personal money order since it did not accept it. Said the court:

> In our opinion, however, the Appellee accepted the instrument in advance by the act of its issuance. *Rose Check Cashing Service, Inc. v. Chemical Bank New York Trust Company*, 43 Misc.2d 679, 252 N.Y.S.2d 100 (1964).

> The personal money order constituted an obligation of Union from the moment of its sale and issuance. The fact that Union was frustrated in retaining the funds because instead of cash it accepted a check drawn on insufficient funds is no reason to hold otherwise.

In addition to the above reasons for affirming the judgment of the trial court, we are of the opinion that the fact that the loss occurred through the negligence of the Defendant should estop it from denying liability. As our discussion above indicates, the source of the purchase price of the money has no bearing on the issue of Defendant's liability to this Plaintiff, however, no loss would have occurred in the first place if the Defendant had recognized the signature of its depositor as a forgery. The Plaintiff is a holder in due course and as between the parties, clearly the one causing the loss should bear it.

For the reasons stated, the judgment of the trial court is affirmed.