O’Toole, J.
This case presents the question whether a bank may justifiably refuse to honor a personal money order it had issued for cash because it has applied the cash to satisfy a debt owed to it by the purchaser of the money order. We answer the question in the negative and affirm the trial court’s judgment for the plaintiff.
The trial judge’s report discloses the following facts:
On April 24, 1979, one Kenneth Barron'(“Barron”) obtained five separate “Personal Money Orders” from the Brookline Trust Company (the “Bank”), each in the amount of $500. Each money order had the amount of $500 imprinted on it and bore at the top the printed words “Brookline Trust Company.” The date and the names of the payor and payee were blank. When the money orders were issued, Barron paid the Bank $2,500 in cash. He had obtained the cash by withdrawing it from an account at the Bank maintained by him or a company he controlled. At the time he purchased the money orders, Barron was already indebted to the Bank in a sum exceeding $8,000.[1]
Barron was the president of Intertel Communications Corporation (“Inter-tel”). He filled out the five money orders, making each payable to the plaintiff, Graybar Electric Company, Inc. (“Graybar”) and used them to pay Graybar for goods supplied to Intertel having a value of $2,500. When Graybar presented the money orders to the Bank for payment, the Bank refused to honor them.[2] Graybar brought the present action to recover from the Bank the face amount of the money orders, alleging that the Bánk had wrongfully dishonored them.
We .begin by noting that the Uniform Commercial Code as in effect in Massachusetts does not specifically address the nature of a “personal money order” as a particular kind of negotiable instrument. It is an order for payment that can be described either as a “draft” [G.L.c. 106, §3-104(2)(a)] or a “check” [§3-104(2)(b)]. Because the purchaser signs it as maker or drawer, it differs from a “cashier’s check” (signed by an officer of the bank on which it is drawn) and a “bank check” (signed by an officer of one bank but drawn on a second bank). It also differs from a “certified check,” as that term is generally used to describe a check drawn on a deposit account maintained by the maker and bearing a certificate of the drawee bank that thé account contains sufficient credits to cover the check and that the bank engages to honor it when presented. See WHITE AND SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE (West Publishing Co., 2d *213 ed., 1980), at 681.
Unlike these other instruments, a personal money order of the type here in question is ordinarily issued in exchange for payment to the Bank of the face amount of the order. That is what occurred in the present case. The transaction is~a common one. The customer expects to be able to use the instrument to pay a third party, and both expect that the issuing bank, which is holding the face amount paid, will in turn pay the item on due presentment. We thinkit is afair statement of prevailing commercial practice, as well as an accurate description of what transpired in the present case, to say that a bank, in issuing a money order in exchange for its face amount, undertakes to honor the draft when duly presented.
The Bank objects that its liability here is precluded by G.L.c. 106, § 3-401 (l)[3] and 3-409(1 ).[4] It argues that it neither signed nor accepted the drafts and therefore cannot be liable on them.
The argument misses the mark. The referred to sections concern liability on the instrument itself. The limiting words “on the instrument” appear in both sections. Uniform Commercial Code Comment 1 to section 3-401 notes:
Nothing in this section is intended to prevent any liability arising apart from the instrument itself.
Similarly, subsection (2) of section 3-409 provides:
Nothing in this section shall affect any liability in contract, tort or otherwise arising from any letter of credit or other obligation or representation which is not an acceptance.
Comment 3 under this section also notes:
[T]his section does not in any way affect any liability which may arise apart from the instrument itself. The drawee who fails to accept may be liable to the drawer or to the holder for breach of the terms of a letter of credit or any other agreement by which he is obligated to accept. He may be liable in tort or upon any other basis because of his representation that he has accepted, or that he intends to accept. The section leaves unaffected any liability of any kind apart from the instrument.
Whether the Bank is liable to Graybar for the face amount of the drafts, apart from the instruments themselves, is thus unaffected by the absence of the Bank’s signature or of an express acceptance. As section 3-409(2) and the accompanying Comment suggest, liability to a holder[5] of the drafts may arise from a representation by the Bank that it “intends to accept.”[6] We do not think such a representation need be express. It can be implied from the circumstances. In particular, we think such a representation can be implied from the facts in the present case.
The popular notion is that personal money orders of the kind issued by the Bank are the virtual equivalent of cash. The principal reason such instruments are made available by banks and are bought by their customers is that the payee need not worry whether they are backed by sufficient funds. The issuance of the money orders by the Bank must be viewed in the context of *214 this general understanding. The form of money order used was the Bank’s. It contained no limitation or reservation to contradict the natural assumption by any prospective payee that upon due presentment the Bank would honor it. We conclude that by issuing each money order in blank, except for the amount, in exchange for cash, the Bank impliedly represented that it would honor — that is, that it intended to accept — each draft when and if duly presented.[7] Its liability to Graybar thus is founded not on the instruments themselves, but upon its failure to honor the duly presented items in accordance with this implied representation.
In any event, apart from such implied undertaking, the Bank’s basis for failing to honor the drafts was unjustified. We hold that the Bank did not have the right to set off the cash paid by Barron for the money orders against a debt owed by him to the Bank.
It is true that funds on general deposit in a bank are the property of the bank, that the relationship of the bank to its depositor is that of debtor and creditor, and that the bank is entitled to set off the balance of the account due the depositor in satisfaction of a debt due the bank from the depositor. Forastiere v. Springfield Institution for Savings, 303 Mass. 101, 103 (1939). Nevertheless, the right to set-off is not absolute. In particular, where the deposit “has taken the form of a negotiable instrument and passed into the hands of a holder in due course, set-off can no longer be allowed.” Id.
Moreover, the rule permitting set-off applies to funds on “general deposit.” Forastiere v. Springfield Institution far Savings, supra, at 103. Cash paid pro tanto for the issuance of a money order is not placed on “general deposit.” Rather, it is “deposited” only in payment for the instrument. The “depositor” retains no right to the funds paid, unless, of course, he names himself as the payee in the instrument. Such funds are not within the rule authorizing the set-off of general deposits are therefore not available for set-off against the money order purchaser’s obligations to the bank.
The Bank thus had no right to set-off the cash paid by Barron for the money orders and consequently ought to have honored the money orders when duly presented by Graybar, a holder in due course. The judgment of the trial court in Graybar’s favor was correct.
The judgment is affirmed and the Report dismissed.

The agreed statement of facts indicates that it was an error for the Bank to have permitted the withdrawal. If the Bank had honored the money orders, the effect would have been to increase Barron’s indebtedness to the Bank by $2,500, the amount of the withdrawal.

The parties have described the Bank as having “stopped payment" on the money orders. More precisely, it dishonored them when they were presented; A customer of a bank may order a bank to “stop payment” on an instrument drawn by the customer, but the bank does not do so, unless it is itself the drawer or maker of the instrument, as in the case of a bank check drawn on another bank. See M.G.L.c. 106, §4-403. The difference in terminology is immaterial to our decision.

Section 3-401(1) provides: “No person is liable on an instrument unless his signature appears thereon.”

Section 3-409(1) provides: “A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawer available for its payment, and the drawee is not liable on the instrument until he accepts it.”

There can b$ no doubt, on the agreed facts, that Graybar was a holder in due course of the drafts. See G.Lc. 106, 83-302.

It has been held that by printing its name on such an instrument, a bank has indicated its intent to be bound by it, and that the bank accepts the instrument in advance by the act of its issuance. Sequoyah State Bank v. Union National Bank, 621 S.W. 2d 683 (Ark. 1981).

No suggestion is made by the Bank that Graybar did not duly present the items.