**Wolfie's Check Cashing Inc. v. Meridian Bank of Pennsylvania**

*Brad Cooper,* for plaintiff.
*Daniel Bernheim III and Andrew Miller,* for defendants.

MAZZOLA, *J.,* May 12, 1993—

### FINDINGS OF FACT

(1) On September 1, 1988, defendant Meridian Bank, sold personal money order #3984813 to defendant Sen Woe Jie in the amount of $50,000.00; it was made payable to plaintiff, Wolfie's Inc., and designated defendant, Jie, as the purchaser.

(2) Meridian Bank stopped payment on the instrument after the money order was presented to the bank for pay-

ment, which stop order was not made known to plaintiff Wolfie's Inc., or the purchaser at the time the bank initiated its stop payment order.

(3) A holder of a negotiable instrument is a holder in due course if he takes the negotiable instrument (a) in exchange for value, (b) in good faith and (c) without notice it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. Here, plaintiff, Wolfie's Inc., is a holder in due course.

(4) A personal money order is a negotiable instrument if it is signed by the maker or drawer; it contains an unconditional promise or order to pay a sum certain in money; it is payable on demand or at a definite time; and it is payable to order or to bearer. A signature can be handwritten, typed, printed or made in any other manner. The personal money order here is a negotiable instrument.

(5) Plaintiff was in possession of the money order made payable to the order of Wolfie's Inc.

(6) A personal money order is not a check and, as such, is not subject to dishonor even where no bank officer signed or certified the instrument; but rather should be treated as a cashier's check or bank money order and not subject to dishonor as dictated by custom and usage.

(7) The purchaser, Jie, did not instruct the issuing bank to stop payment after the bank accepted Jie's monies, totaling $50,000.00, in payment for the money order and issued the money order payable to plaintiff Wolfie's Inc.

(8) No defense exists to plaintiff's status as a holder in due course.

(9) The defendant has failed to overcome the presumption of a holder in due course on plaintiff's behalf; the defendant has failed to show bad faith dealing on the part of plaintiff; finally, the defendant has failed to show

any participation on the part of plaintiff in any "scheme," "scam" or other such fraudulent activities.

(10) Defendant bank has failed to show any wrongdoing and/or any breach of duty on behalf of defendant, Jie.

(11) Defendant bank did not plead the affirmative defense of payment or satisfaction and, as such, that defense is not now available to the bank, and any use of payment or satisfaction at this time would be prejudicial to plaintiff.

## CONCLUSIONS OF LAW

(1) Meridian bank is the maker of the instrument; Sen Woe Jie is the purchaser of the instrument; Wolfie's Inc. is the payee of the instrument; and the personal money order here was tendered to the plaintiff for value.

(2) The personal money order here is negotiable instrument since it was signed by the maker or drawer, the purchaser, Sen Woe Jie; and/or the bank, because the bank's name is emblazoned on the money order; the instrument was purchased for a fee from the bank; it contains an unconditional promise to pay $50,000 on demand and is payable to plaintiff Wolfie's Inc. All the elements of negotiability are present.

(3) Plaintiff is a holder of the money order, a negotiable instrument.

(4) Plaintiff is a holder in due course. The money order is a negotiable instrument and an obligation of defendant bank, which cannot unilaterally dishonor the instrument.

(5) Plaintiff can enforce the instrument free from all competing claims of ownership and all personal defenses of the maker or drawer.

(6) After the sale of a personal money order, the issuing bank cannot stop payment on the instrument absent an order to do so by the purchaser.

(7) Where, as here, a check is cashed by the check casher, the casher is a holder in due course, as long as the check is regular on its face and there is no actual knowledge of any defense against the instrument. There is no duty of inquiry, and the check is enforceable against the drawer who had stopped payment.

(8) Since the bank wrongfully denied payment of the money order to the detriment of the plaintiff, and since the bank has no defense to Wolfie's status as holder of due course, the bank, and not Sen Woe Jie or the plaintiff, should bear the loss and must pay its obligation of $50,000 as demanded to the plaintiff.

(9) The stop payment order was an unauthorized unilateral act taken by the defendant, Meridian Bank, after it approved the transaction, debited the account of defendant, Sen Woe Jie, and issued the money order in the amount of $50,000.

(10) The bank's unilateral issuance of a "stop payment" order imposes liability against it with the issuing bank, Meridian, liable to the holder of the personal money order, plaintiff, Wolfie's Inc., for the face amount of $50,000.

(11) The personal money order here is the sole obligation of defendant, Meridian Bank.

## OPINION

### I. *Facts*

On September 1, 1988, the defendant, Meridian Bank of Pennsylvania, issued a personal money order to defendant, Sen Woe Jie, hereinafter "purchaser," in the amount of $50,000. The note was payable to plaintiff, Wolfie's Inc.; the personal money order was tendered to plaintiff, and the purchaser was paid $50,000 by plaintiff in reliance upon the said personal money order. Upon

presentation by plaintiff, the issuing bank refused to pay the plaintiff $50,000.

The plaintiff seeks recovery of $50,000 against the defendants. The purchaser, in his answer to plaintiff's complaint, denies any knowledge of the reason for the issuing bank's refusal to honor the personal money order. Moreover, the issuing bank fails to offer a reason for the "stop payment" order other than claiming notice of insufficient funds from another banking institution. Yet the record is clear that adequate funds were available on deposit with Meridian to cover the amount of the money order as of September 1, 1988. The purchaser admits, in his answer, paying to the issuing bank $50,000 and a personal money order being issued payable to the plaintiff. The plaintiff, as a holder in due course, is afforded certain rights and remedies under our Uniform Commercial Code (U.C.C. 3301, *et seq.*). Notwithstanding the same, the issuing bank refuses to make payment to the plaintiff of the amount due and owing.

## II. *Issue*

Whether under the Pennsylvania Uniform Commercial Code, a bank that issues a personal money order may, on its own initiative, stop payment of the personal money order, and thereby prejudice the rights of a holder in due course of the negotiable instrument?

## III. *Legal Discussion*

An issuing bank may not unilaterally dishonor a personal money order without cause or instruction by the purchaser. Here, a personal money order was purchased from the bank. The purchaser did not instruct the issuing

bank to "stop payment." The same was an unauthorized unilateral act taken after the bank received $50,000 from the purchaser. Because the purchaser of a money order ordinarily has no checking account, the bank owes a duty to ascertain and assure the proper issuance of the money order. When a bank does issue the money order, it seems reasonable to place upon the bank the responsibility and obligation to satisfy the holder thereof. In the event of a loss, the bank retains the right to recover from the purchaser. However, the holder in due course should not be the one to suffer.

The Uniform Commercial Code, despite the bank's contentions to the contrary, does not address personal money orders. The bank's position that it may stop payment without imposition of liability on it is without merit and is contrary to the legally accepted precedent. In *Mirabile v. Udoh and Chemical Bank*, 92 Misc.2d 168, 399 N.Y.S.2d 869 (1977), the court held that an issuing bank is liable to the holder of a personal money order for the face amount. In *Mirabile,* the court reasoned that persons who purchase money orders issued by banks are authorized to pledge the bank's credit *pro tanto,* and such custom is to be afforded full recognition for commercial transactions to proceed unimpeded. In another well reasoned opinion, the Supreme Court of Arkansas in *Sequoyah State Bank v. Union National Bank of Little Rock,* 621 S.W.2d 683 (1981) held that the issuing bank may not stop payment on a personal money order on its own initiative:

"The only issue in this case is whether Union Bank by its own initiative can stop payment on a personal money order it had issued in exchange for a hot check and, thereby, cause Sequoyah Bank, a holder in due course, to bear the loss. Under these circumstances, the

loss must be borne by Union Bank which issued the negotiable instrument to be circulated in commerce.

"We do not decide the question of whether the purchaser may stop payment, but we do hold that after the sale of a personal money order, the issuing bank cannot stop payment on the instrument.... The Uniform Commercial Code apparently did not directly contemplate the use of money orders and made no specific provision for them. It was recognized in *Mirabile* that it is the custom and practice of the business community to accept personal money orders as a pledge of the issuing bank's credit. We may consider this custom and practice in construing the legal effect of such instruments."

In *Rose Check Cashing Service Inc. v. Chemical Bank N.Y. Trust Company,* 40 Misc.2d 995, 244 N.Y.S.2d 474, (1963), the court reasoned that an issuing bank may not deny payment of a personal money order absent an order to do so by the purchaser. That which the Court noted in the *Rose Check Cashing* case is likewise applicable here.

"In the instrument in suit, the drawer purchases the instrument from the bank. The transaction is in the nature of a sale. No deposit is created. The funds to pay the instrument immediately come within the bank's exclusive control and ownership. ... The bank's contention that the instrument is a check is inconsistent with its own acts. The bank (drawee) stamped "stop payment" on the instrument in suit on its own order. Nowhere in the Negotiable Instruments Law is there any provision that a drawee (bank) may "stop payment" of a check unless ordered to do so by the drawer.

"In the instant case, the fact that there was a valid issuance and negotiation of the personal money order is uncontested. The bank accepted the purchaser's $50,000 and, upon presentment of the personal money order, is

obligated to satisfy the same. The status of the personal money order has been resolved by the Court of Appeals of Texas. In *Interfirst Bank Carrollton v. Northpark National Bank of Dallas,* 671 S.W.2d 100 (1984), the court held that the personal money order is a bank obligation:

"A personal money order more resembles a bank money order than any other instrument.... In the only Texas case dealing with bank money orders, it is held that courts which have dealt with bank money orders have treated them as instruments analogous to cashier's checks or bank obligations. We are of the opinion that the personal money order is analogous to a bank money order, that it should be treated as a cashier's check. *A cashier's check is held to be a bill of exchange drawn by a bank on itself and accepted in advance by act of its issuance and not subjected to countermand by either its purchaser or the issuing bank.... Under section 4303 of the Uniform Commercial Code, it is not subject to stop order after acceptanceId. at 103.*

The personal money order is accepted upon its issuance and, therefore, under section 4303 of the Uniform Commercial Code, is not subject to refusal by the drawee bank. It was accepted by the drawee bank in advance by the very act of its issuance. *Rose Check Cashing Service Inc. v. Chemical Bank New York Trust Company, supra; Interfirst Bank v. Northpark National Bank, supra; Wertz v. Richardson Heights Bank and Trust,* 495 S.W.2d 572 (Tex. 1973).

*Garden Check Cashing Service Inc., supra,* clearly does not stand for the proposition that a bank may on its own initiative issue a stop payment on a money order duly transacted. The case is factually distinguishable from the case before this court. *Garden Check Cashing* in-

volved a personal money order that had been lost before the purchaser had signed it or filled in the name of the payee. Because the purchaser was able to identify the number, amount, branch and date of purchase to the defendant issuing bank's satisfaction, the bank accepted the stop payment order made by the purchaser and refunded the amount of the instrument to the purchaser. The plaintiff was a licensed check cashing service who cashed the money order for a person who apparently had found it and entered his name as both payee and purchaser. Clearly, the facts of *Garden Check Cashing Service Inc.* and those before the court in the instant case are not analogous. Accordingly, the bank's argument, which relies wholly upon the reasoning found in *Garden Check Cashing Service Inc.,* is without sufficient merit and is not persuasive before this court.

In *Rose Check Cashing Service, Inc. v. Chemical Bank New York Trust Company, supra,* the court there addressed the very issue that is now before this court and held that an issuing bank may not stop payment on its own initiative. In the *Rose Check Cashing* case, a check cashing service cashed a personal money order for an original purchaser. Thereafter, the issuing bank stopped payment on its own initiative when it discovered that the purchaser had paid for the money order with a personal check drawn on insufficient funds. The check cashing service brought suit to recover the funds. The court granted summary judgment for the plaintiff, holding that there were sufficient differences between checks and personal money orders to satisfy the rule that the holder of an ambiguous instrument may treat it as either a draft or a note at his discretion. This decision was affirmed on appeal, which concluded that the money order was an irrevocable bank obligation. Although the order had not been signed by a bank official, the court held that

the imprinted name and seal of the bank was sufficient to "evidence the bank's intent to be bound thereunder," 252 N.Y.S.2d at 103.

Defendant, Meridian Bank, also relies upon *American Bank and Trust Company of Pennsylvania v. Commonwealth National Bank*, 73 D.&C.2d 463 (1976), which involves personal money orders which were stolen from the issuing bank. The court determined that the personal money orders were "not issued" because they had been stolen before being purchased. That is not the case here, and this argument is likewise without sufficient merit and is, therefore, also not persuasive before this court. In *American Bank and Trust Company of Pennsylvania, supra,* the court determined that the issuing bank had not effectively "issued the money order" and as such was not obligated thereon. But the court did provide guidance in these cases by stating that it is the act of issuance of the personal money order which obligates the bank to pay the holder. In the instant case, the personal money order is admitted to have been issued and, therefore, the bank is clearly obligated to the plaintiff, a holder thereof. Rather, *American Bank and Trust Company, supra,* supports the plaintiff's position that upon issuance the bank is obligated to the holder in due course.

It has been admitted by the purchaser that he purchased from the bank a personal money order for $50,000 and that he paid to bank the sum of $50,000 whereupon a personal money order was issued. The personal money order was properly transacted and the purchaser was paid $50,000 by the plaintiff. The bank, without explanation or instruction from the purchaser, issued a "stop payment." The plaintiff, as a holder in due course as defined at section 3302 of the Uniform Commercial Code, is therefore entitled to recovery from the defendant, Meridian Bank, whose obligation it is for payment of the instrument.

A bank's duty to honor "stop payment" orders under Section 4403 of the Uniform Commercial Code is subject to the condition that the customer give notice of the desire to have payment stopped "at such time and in such manner as to afford the bank a reasonable opportunity to act on it." Because the purchaser in this case never directed a "stop payment," the conduct of the bank is unreasonable and without foundation. There is no evidence whatsoever of a theft, loss or a forgery. This case involves a bank which on its own initiative stopped payment of a personal money order in the amount of $50,000, which was paid to the purchaser by the plaintiff. As to Count IV of plaintiff's complaint, this court is of the opinion that the evidence presented was insufficient to show that defendant Jie and defendant Meridian Bank acted together to injure or harm the plaintiff so as to unjustly enrich one defendant or the other or the both of them.

The plaintiff is a holder in due course as defined at section 3302 of the Uniform Commercial Code and entitled to rights and protections as defined at section 3301, *et seq.* The bank has a duty and obligation to pay to the plaintiff $50,000 which was paid to the purchaser in good faith. It is clear that the bank wrongfully denied payment to the plaintiff.

The plaintiff's complaint sets forth an adequate basis for a claim against the bank under theories of negligence or, perhaps, even gross negligence. The bank knew that the personal money order was payable to the plaintiff. Accordingly, the bank had a duty to notify the plaintiff that the money order would not be honored. The bank took no such action. plaintiff submits this conduct alone is not reasonable and constitutes negligence.

An intentional decision was made by the bank to issue the personal money order and then, without basis, it denied

payment thereon. This failure to pay monies to plaintiff was either a negligent and/or intentional act. The plaintiff as a holder in due course has been denied payment wrongfully.

Although the conduct of the bank was negligent and/or intentional, this court is of the opinion that such conduct does not rise to the level of gross and willful misconduct. Punitive damages, therefore, would be inappropriate.

## IV. *Conclusion*

Wherefore, this court finds that the plaintiff, here, Wolfie's Inc., is a holder in due course of an instrument upon which defendant, Meridian Bank, is solely obligated, and that no competent evidence was presented to this court to enable it to find anything other than that plaintiff is owed the full value of the personal money order at issue here in the amount of $50,000., plus interest and costs.

## ORDER

And now, May 12, 1993, this court finds in favor of plaintiff, Wolfie's Check Cashing, Inc., and against defendant, Meridian Bank of Pennsylvania.

It is hereby ordered, adjudged and decreed that plaintiff is owed the full value of the personal money order at issue here, in the amount of $50,000, plus interest and costs, said amount being the sole obligation of defendant, Meridian Bank