**HOTEL RIVIERA, INC., a Nevada Corporation, Appellant,**

v.

**FIRST NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, OKLAHOMA, a National Banking Association, Appellee.**

No. 83-2092.

United States Court of Appeals, Tenth Circuit.

July 29, 1985.

---

**1202**

Robert D. Nelon of Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., for appellant.

George W. Dahnke of Hastie & Kirschner, Oklahoma City, Okl., for appellee.

Before McKAY and MOORE, Circuit Judges, and BROWN,[*] District Judge.

JOHN P. MOORE, Circuit Judge.

This is an appeal from the denial of a motion for reconsideration of the trial court's order granting summary judgment to the appellee. The underlying action was brought to enforce payment of a cashier's check issued by the appellee, First National Bank and Trust Company of Oklahoma City, Oklahoma (Bank), and endorsed by the payee to the appellant, Hotel Riviera, Inc. (Hotel). When the check was presented for payment, the Bank dishonored it having discovered the check had been paid for with forged instruments. In the trial court, the Bank argued the Hotel was not a holder in due course, thereby permitting the Bank to assert the personal defense of failure of consideration. The trial court allowed the defense, entered judgment for the Bank, and denied the Hotel's motion for rehearing, 580 F.Supp. 122. We reverse.

The question presented is whether the Hotel, as endorser without knowledge of the underlying fraud of the purchaser of the cashier's check, is subject to the Bank's defense. Even though the Hotel agrees it is not a holder in due course because it accepted the endorsement of the cashier's check in satisfaction of a gambling debt, the issue turns upon the nature of a cashier's check and consideration of whether the Hotel is otherwise an innocent party to the transaction.

The record shows that the cashier's check was issued to Richard K. Pemberton, a Bank customer, who deposited to his own account two checks drafted by his employer and ostensibly issued to two of the employer's customers. Prior to deposit, Pemberton forged the endorsements of the customers. Pemberton's bank account was initially credited with the amount of the forged checks, $480,000, and then debited with the amount of the cashier's check, $250,000.

After being issued the cashier's check, Pemberton flew to Las Vegas, Nevada, where he set out to gamble at the Hotel's casino. To finance this effort, Pemberton offered the check to the Hotel in exchange for credit in the casino. Though the Hotel had a policy against acceptance of checks without verification, it eventually agreed to a late night acceptance of this check conditioned upon certain requirements irrelevant here. As soon as possible the next day, and while Pemberton was still in the casino, a Hotel employee called the Bank to verify the check. The Hotel was informed that the name of the payee, the amount of the check, and its number were accurate. The Hotel was also told that there were no outstanding stop orders and that the check had not been reported lost or stolen. With this verification, on January 6, the Hotel deposited the cashier's check in its own bank for collection.

---

[*] The Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

On January 8, the Bank was notified of Pemberton's forged endorsements of his employer's checks and of the resultant dishonor of those checks by the employer's bank. Then, in turn, the Bank dishonored the cashier's check, prompting this suit.

■ Our analysis hinges on the nature of a cashier's check. We note that although there is some judicial disparity in the perception of instruments of this genre, we have said that a cashier's check is an indebtedness of a bank which is accepted—as that term is applied by the Uniform Commercial Code (U.C.C. or Code)—upon its issuance. *Anderson, Clayton & Co. v. Farmers National Bank of Cordell*, 624 F.2d 105 (10th Cir.1980). Accordingly, the issuing bank's liability on the instrument is governed by the Code. *Anderson, Clayton & Co. v. Farmers National Bank of Cordell, supra; State of Pennsylvania v. Curtiss National Bank of Miami Springs, Florida*, 427 F.2d 395 (5th Cir.1970).

■ Under most circumstances, acceptance by a bank constitutes a promise to honor the check upon presentment, U.C.C. § 3–410; Okla.Stat. tit. 12A, § 3–410 (1963); but we and other courts have recognized an exception to that general rule. Although not specifically provided in the Code, banks have been allowed to countermand cashier's checks when presented by a holder who has participated in some act of fraud which has led to or caused the original issuance of the cashier's check. *Anderson, Clayton & Co. v. Farmers National Bank, supra; TPO Inc. v. FDIC*, 487 F.2d 131 (3d Cir.1973); Lawrence, *Making Cashier's Checks and Other Bank Checks Cost-Effective: A Plea for Revision of Articles 3 and 4 of the Uniform Commercial Code*, 64 Minn.L.Rev. 275 (1980). Underlying this exception is the unassailable equity that no one should profit from fraudulent acts. Yet, that equity has never been applied in the context of this case.

■ The question we face here is whether the endorsee who neither participated in nor knew of the fraudulent procurement of the cashier's check should bear the burden of the fraudulent actor. The Bank argues for the affirmative because the check was endorsed in payment of a gambling debt, rendering the endorsement void under the laws of Nevada. *See Sea Air Support, Inc. v. Herrmann*, 613 P.2d 413 (Nev. 1980). Assuming only for the sake of argument the contention is sound, the Hotel's concession that it is not a holder in due course moots the point. However, it is arguable whether Nev.Rev.Stat. § 1.030 (1957), which makes gambling debts unenforceable, would apply to transactions in which the maker of the instrument (here the Bank) was not a party to the gambling transaction.

Thus, if the purpose for which Pemberton endorsed and negotiated the check is significant, it is significant only in relation to whether the Hotel came into possession of the check with knowledge of its "defects." [1] Since that point is conceded, however, we need only consider whether the Hotel can nonetheless demand payment of the check under Article 3 of the U.C.C.

We believe the reason for allowing a defrauded bank to defend against a demand for payment made by a culpable holder does not obtain here. There is a relationship between the acts of a holder who procures the issuance of a check by fraud and the loss resultantly sustained by an innocent bank. No similar relationship exists here. It is true the Hotel accepted the check in payment of a gaming debt; yet, that acceptance was not the *cause* of the Bank's injury. The forged endorsements of the checks deposited by Pemberton in payment of the cashier's check, coupled with the Bank's subsequent issuance of its own check without verification of the deposit, caused the injury. The Hotel had no part in prompting that injury, and its subsequent acceptance of the endorsement by Pemberton is irrelevant to the Bank's loss. [2]

1. Since the "defect" had nothing to do with the issuance of the cashier's check, and could only be asserted against the endorsement, the concession is perplexing in the context of this suit.

2. The trial court concluded that the Hotel's ac-

Since the cashier's check was accepted on issuance, the Bank cannot be allowed to escape the effect of its acceptance on the ground that the endorsement was nullified because it was made in payment of a gambling debt. That result is both a non sequitur and an intentional avoidance of the clear import of U.C.C. § 4–303(1)(a); Okla. Stat. tit. 12A, § 4–303(1)(a) (1963).[3]

This holding does not deny the effect of Nevada law regarding the enforceability of instruments given in satisfaction of gambling debts, nor does it ignore the concept of allowing the assertion of personal defenses. It does, however, recognize the peculiar nature of a cashier's check and effects the purpose of such an instrument. In commercial circles, cashier's checks have the aura of cash. 10 Am.Jur.2d, *Banks* § 544 (1965); *Lawrence, supra,* at 285. Whether that aura bears scrutiny in the law is irrelevant here. It is important only that there is a universal commercial reverence for cashier's checks which is the product of the issuing bank's promise of payment. While the U.C.C. speaks in general terms about the acceptance of cashier's checks upon issuance, any attempt to exclude that consequence must have some logical relationship to the law of negotiation established and relied upon in the Code. While that relationship is manifest when a fraudulent purchaser attempts to negotiate a cashier's check, the logic fails in the case of an endorsee who has done nothing to cheat the issuing bank. *Whitehead v. American Security and Trust Co.,* 285 F.2d 282 (D.C.Cir.1960) (en banc).[4] In short, the personal defense of failure of

ceptance of the check placed the Hotel in the same position as a payee whose fraud caused the issuance of the check. We respectfully suggest the logic is faulty as between the Bank and the innocent endorsee. This is especially true when, as here, the endorsee obtains the issuing bank's verification of the check prior to its unconditional acceptance and the endorsee's change of position.

3. That section provides:

(1) Any knowledge, notice or stop-order received by, legal process served upon or setoff exercised by a payor bank, whether or not effective under the rules of law to terminate, suspend or modify the bank's right or duty to

consideration is inapplicable to the instant transaction.

The judgment of the District Court is reversed with directions to enter judgment in favor of the appellant.

pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the knowledge, notice, stop-order or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has done any of the following:

(a) accepted or certified the item.

4. Although *Whitehead* involved a "treasurer's check," a cashier's check and treasurer's check are equivalent. *See also DaSilva v. Sanders,* 600 F.Supp. 1008 (D.D.C.1984).