**FIRST NATIONAL BANK OF NOCONA, Plaintiff,**

v.

**DUNCAN SAVINGS AND LOAN ASSOCIATION, Defendant.**

Civ. No. 85–1899–R.

United States District Court, W.D. Oklahoma.

March 4, 1987.

Grey Satterfield, Kornfeld, Franklin & Phillips, Oklahoma City, Okl., for plaintiff.

Richard E. Koenig and Keith W. Heck, Ferguson, Horn & Lawson, Chickasha, Okl., for defendant.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are cross motions for summary judgment. The case in which these motions arise involves a money order in the amount of $24,190.00 issued by Defendant Duncan Savings and Loan for the benefit of McAffrey Funeral Home payable to the order of Plaintiff, First National Bank of Nocona. Prior to Plaintiff's presentment of the money order to the Federal Home Loan Bank of Topeka, Kansas, the drawee bank, Defendant Duncan Savings and Loan, at the request of Al McAffrey, issued a stop payment order on the money order, which was honored by the Federal Home Loan Bank. Accordingly, when Plaintiff presented the money order for payment, payment was refused. Plaintiff has therefore sued for payment on the instrument, alleging that it is the legal owner and holder of the money order. Complaint at ¶ 3. Defendant denies that it is liable for payment on the money order and asserts, as affirmative defenses, *inter*

*alia,* failure of consideration (Answers, Affirmative Defense No. 1) and estoppel to present the money order for payment based on Plaintiff's participation in a loan to McAffrey Funeral Home, Inc. because the FDIC allegedly has been determined to be the owner and holder of the note representing that loan in a prior action. *See* First Amended Answer, Affirmative Defense No. 7, filed subsequent to Plaintiff's motion.

It is undisputed that Penn Square Bank, N.A. made a loan to McAffrey Funeral Home, Inc. represented by note number 29896 on which Penn Square Bank, N.A. is the payee (See, e.g., Exhibits 10, 12 and 21 to Deposition of Al McAffrey; Deposition of Emery McIntosh at pp. 40–41) and that Plaintiff and Penn Square Bank entered into a participation agreement concerning such note. *See* Exhibit 12 to Depositions of Al McAffrey and Jimmy Fitts. After Penn Square Bank was declared insolvent, the FDIC, as receiver for the bank, sought to transfer the loan which was the subject of this participation agreement to Plaintiff by means of a "reverse participation agreement." *See* Letter dated September 30, 1982, from Lamar C. Kelly, Assistant Liquidator for the FDIC, to First National Bank of Nocona, unnumbered Exhibit to Deposition of Emery McIntosh and Exhibit 16 to McIntosh Deposition, Appendix 2 to Defendant's Brief. The latter exhibit, a letter from a closer for the Asset Transfer Department of the FDIC, purported to enclose an original and copy of a "reverse participation" letter agreement and a Payoff Request/Quotation Form figured for a closing (transfer of the note) as of March 31, 1983. The letter requested that Plaintiff bank execute and return the enclosed documents and advised that if the FDIC received them on or before April 15, 1983, it would proceed with the "closing".

Exactly what communications between any representatives of the maker of the note (McAffrey Funeral Home, Inc.), the FDIC and Plaintiff bank concerning the "reverse participation agreement" took place and when is not entirely clear from the evidence submitted by the parties, but

it is clear that ultimately, on February 23, 1983, Defendant bank and McAffrey Funeral Home, Inc. entered into a letter agreement, the text of which is reproduced here in full:

Dear Mr. McAffrey:

This letter is to acknowledge receipt of your Cashier's Check in the amount of $24,190.00 to be applied to your indebtedness originated at Penn Square Bank, operated currently by the F.D.I.C.

The proceeds of the above mentioned Cashier's Check will be applied, interest first, to the balance owed on Note #29896. It is our understanding that the note referred to will be reverse-participated between the F.D.I.C. and First National Bank of Nocona within the next few days. At that time, the proceeds will be applied as described.

It is further noted and agreed that the balance due on said Note will be paid in the following manner:

1. A $40,000.00 payment will be made no later than March 30, 1983.

2. The balance remaining will be paid in full by June 30, 1983, along with all interest due.

Yours truly,

Jimmy Fitts

President

This Agreement noted and accepted by me this date.

McAFFREY FUNERAL HOME, INC.

BY: _____

Al McAffrey, President

Exhibit 11 to McAffrey Deposition, Appendix 1 to Plaintiff's Brief (hereinafter "Letter Agreement").

Noteworthy, however, for purposes of the motions under consideration, is a letter dated April 13, 1983, from Jimmy Fitts, President of Plaintiff bank to the FDIC in which Fitts states he would be interested in buying out the FDIC's interest in the loan; that when McAffrey pays the $40,000 payment on the loan that he is scheduled to make *this* month, he would welcome "the opportunity to investigate the possibility of restructuring the loan with the intention of buying out the FDIC's interest;" and that following receipt of the $40,000 payment,

he should be able to reach a decision on this matter within two weeks. Exhibit 20 to McIntosh Deposition, Appendix 3 to Defendant's Brief.

It is undisputed that the reverse participation agreement was never executed. Plaintiff contends that McAffrey Funeral Home, Inc. did not make the $40,000 payment due on March 30, 1983, and that this is the sole reason that the reverse participation was not effected. In support of its argument that the $40,000 payment was a condition precedent to the reverse participation, Plaintiff relies on the Letter Agreement, quoted above, and the testimony of its President Jimmy Fitts and of the FDIC's documents custodian that the only reason the reverse participation did not take place was because the debtor failed to make a payment of $40,000 which, together with the sum represented by the money order, was the amount the debtor agreed to pay the FDIC in consideration of its apparent agreement to reverse its participation in the note to Plaintiff bank. This testimony is supported somewhat by a memorandum identified by the FDIC's documents custodian dated April 16, 1983, from DeWayne Horton to Susan Byrd, attorney for the FDIC in its action against McAffrey Funeral Home. The memorandum requests suspension of further legal action on the McAffrey note in view of a "64,000 cash offer by the Debtor in exchange for reverse participation to the First National Bank of Nocona, Texas", which is better than the FDIC might obtain in litigation. Exhibit 18 to McIntosh Deposition, Appendix 3 to Defendant's Brief. The memorandum also states that "[a]fter payment, the First National Bank of Nocona, Texas has agreed to consider refinancing the balance and paying off the FDIC." *Id.*

It is also undisputed that on September 12, 1983, judgment was entered in favor of the FDIC as receiver for Penn Square Bank, N.A. against McAffrey Funeral Home for all sums due and payable on the note which is the subject of Plaintiff's participation agreement, which included the principal amount of $91,000, accrued interest of $37,833.61, post-judgment interest,

costs and attorneys fees in *Federal Deposit Insurance Corporation, as Receiver for Penn Square Bank, N.A. v. McAffrey Funeral Home, Inc. and G. Terry Felts,* Case No. CIV-83-778-BT.

In support of its motion, Plaintiff makes three arguments. First, Plaintiff argues that money orders are generally treated, and should for policy reasons be treated, as cash equivalents, and accordingly, like cashier's checks, not subject to countermand. Plaintiff buttresses this argument by asserting that the money order in issue is more closely akin to a cashier's check than a teller's check and that it should therefore fall within the "cash equivalency rule" adopted for cashier's checks in *Hotel Riviera v. First National Bank and Trust Company,* 768 F.2d 1201, 1204 (10th Cir. 1985), precluding stop payment orders. Because the money order was drawn on Defendant bank's account at a federal home loan bank, which Defendant maintains is statutorily prohibited from engaging in banking, rather than on a commercial bank, the order should be treated like an instrument on which the drawer and drawee are one in the same, i.e., a cashier's check, rather than as an instrument drawn by one bank on its account at another bank, i.e., a bank check or teller's check, Plaintiff argues. Since the Uniform Commercial Code ("U.C.C.") neither defines "cashier's check" nor incorporates the concept of cash equivalency, Plaintiff posits, the U.C.C. does not apply to the analogous instrument at issue.

Secondly, Plaintiff argues that even if the U.C.C. applies to the money order, Plaintiff is a holder in due course. Anticipating Defendant's argument that Plaintiff did not take the money order "for value," Okla.Stat. tit. 12A, § 3–302, Plaintiff asserts that it took the money order as payment of an antecedent debt of McAffrey Funeral Home, Inc. to the FDIC in which Plaintiff had a participating interest, which constitutes taking for value as defined in Okla.Stat. tit. 12A, § 3–303(b). Alternatively, Plaintiff asserts, even if it is merely a holder, not a holder in due course, failure of consideration is no defense when, as here, the instrument was given "in payment of or as security for an antecedent obligation," Okla.Stat. tit. 12A, § 3–408 and, in any event, the purchaser of the money order (McAffrey Funeral Home, Inc.) had no authority to countermand on the basis of a wrong allegedly practiced on the purchaser by the payee because upon issuance the order constituted an executed sale of credit and an unconditional primary obligation of the issuer, not the purchaser. *See* Okla.Stat. tit. 12A, § 3–306(d).

Thirdly, Plaintiff argues that pursuant to Okla.Stat. tit. 12A, § 3–603 Defendant had no obligation to accede to the remitter's request to stop payment unless and until the remitter either gave Defendant bank adequate indemnity or obtained a court order enjoining payment, neither of which it did. Therefore, so Plaintiff's argument goes, Defendant's position of primary liability is Defendant's own fault. In making this argument, Plaintiff does not explain how Defendant's negligence makes it liable on the instrument or argue that the *raison d'etre* for the protections of which the drawer may afford itself pursuant to § 3–603 is its inability to assert the claims or defenses of the remitter.

Defendant in response to Plaintiff's arguments and in support of its own motion makes several arguments. Paramount to all of its arguments is its first argument: A money order is a check pursuant to Okla. Stat. tit. 12A, § 3–104 to which the U.C.C. applies. Defendant characterizes itself as a customer of the federal home loan bank within the meaning of Okla.Stat. tit. 12A, § 4–104(e) with the right to stop payment pursuant to Okla.Stat. tit. 12A, § 4–403. Defendant further argues that the Plaintiff is not a holder in due course and therefore, Defendant is entitled to assert all defenses provided in Section 3–306. Defendant attacks Plaintiff's asserted holder-in-due-course status on two bases. First, Defendant says that Plaintiff did not give value because the reverse participation agreement was not effected and under the participation agreement, Plaintiff had no rights in the promissory note except to receive its pro rata share of principal and interest from the FDIC and no rights to

collect on the note. Thus, Defendant argues that because the agreed consideration, i.e., reversal of the participation agreement, had not been performed, Plaintiff did not take the money order for value, as defined by Okla.Stat. tit. 12A, § 3–303. Secondly, Defendant asserts that Plaintiff did not take the money order in good faith and without notice of any defenses against it. Defendant interprets the Letter Agreement to give Plaintiff the right to apply the proceeds of the money order toward payment of the note after and only after a reverse participation agreement had been entered into between Plaintiff and the FDIC. Thus, according to Defendant, since Plaintiff knew the reverse participation agreement had not been made when it took the money order, it took it with knowledge of defenses to the instrument, e.g., failure of consideration.

Defendant then argues the existence, based upon the undisputed facts, of certain defenses alleged in its Answer and Amended Answer. Defendant relies on the existence of these defenses and proof thereof to not only defeat Plaintiff's motion, unless the Court finds that no right to stop payment on money orders exists as a matter of law under the cash equivalency rule, but to entitle Defendant to summary judgment as well. Defendant asserts that three defenses to Plaintiff's claim on the money order exist: 1) failure of a condition precedent, i.e., consummation of the reverse participation, contained in the Letter Agreement of February 23, 1983, which Plaintiff characterizes as a "restrictive endorsement"; 2) failure of consideration; and 3) that the judgment in favor of the FDIC against McAffrey Funeral Home, Inc. on the underlying obligation, the promissory note, bars Plaintiff's action herein on the money order under principles of res judicata and collateral estoppel. Plaintiff seems to suggest that Defendant, as the primary obligor on the money order, cannot assert the first two defenses because these defenses belong to a third person, McAffrey Funeral Home, the remitter. Defendant does not address this argument except as it pertains to the alleged defense of restrictive endorsement, which defense Defendant says

is expressly exempt from the operation of *jus tertii* by Okla.Stat. tit. 12A, § 3–306.

With regard to its defense based on the FDIC's judgment against McAffrey Funeral Home, Inc. on the note, Defendant points out that a judgment in favor of a holder of a note is a complete bar to any other action by any other party or parties on the note. Thus, Defendant says, the Plaintiff cannot claim it presented the money order in payment of the note because it was not the holder of the note and had not been assigned the judgment. Defendant views Plaintiff as collaterally estopped to recover on the money order because the FDIC has already obtained a judgment on the underlying obligation for which the money order was issued in payment—the note. As a corollary to this argument, Defendant argues that a cause of action may not be split, which is the effect of allowing Plaintiff to recover on the money order taken as partial payment on the note. Defendant further buttresses its collateral estoppel argument by citation to Okla.Stat. tit. 12A, § 3–802(b), which provides that an action may be maintained on either a dishonored instrument or the underlying obligation, but may not be maintained on the underlying obligation without an offer to surrender the instrument to the obligor or into court, or by giving the obligor security against loss by reason of further claims on the instrument. Thus, Defendant contends that the FDIC should have returned the money order to McAffrey Funeral Home, Inc. or tendered it to the Court when it sued on the obligation underlying the money order—the note, and in any event, that suit on *this* instrument, the money order, is precluded by the prior suit on the note.

I

■ The first issue raised by these cross motions for summary judgment is whether the money order should be treated as the equivalent of cash, either for reasons of custom or "policy," or because issuance by the drawer also constitutes acceptance by the drawee under the Uniform Commercial Code, which makes the instrument not subject to countermand. These bases for

treating an instrument as a cash equivalent are illustrated by the Tenth Circuit's opinion in *Hotel Riviera, Inc. v. First National Bank and Trust Company*, 768 F.2d 1201 (10th Cir.1985). In that case, the Tenth Circuit reiterated that a cashier's check is an indebtedness of a bank which is accepted, *see* U.C.C. § 3–410; Okla.Stat. tit. 12A, § 3–410, upon issuance, and not subject to countermand except when presented by a holder who has participated in some fraudulent act inducing the bank's issuance of the instrument. 768 F.2d 1203. The Court also stated that application of this Code provision recognized the peculiar nature and purpose of cashier's checks, which have the aura of cash in commercial circles. 768 F.2d 1204. The same rationales, either separately or in combination, have been employed by various courts holding that personal money orders, bank money orders and bank drafts or teller's checks are not subject to stop payment orders. *See, e.g., Sequoyah State Bank v. Union National Bank of Little Rock*, 274 Ark. 1, 621 S.W.2d 683 (1981); *Mirabile v. Udoh*, 92 Misc.2d 168, 399 N.Y.S.2d 869 (N.Y.City Civ.Ct., Small Claims 1977) (personal money orders are cash equivalents); *Interfirst Bank Carrollton v. Northpark National Bank of Dallas*, 671 S.W.2d 100 (Tex.App. 8 Dist.1984) (personal money order is accepted upon issuance and cash equivalent); *but see Garden Check Cashing Service, Inc. v. First National City Bank*, 25 A.D.2d 137, 267 N.Y.S.2d 698 (N.Y.App. Div.1966), *aff'd*, 18 N.Y.2d 941, 223 N.E.2d 566, 277 N.Y.S.2d 141 (1966); *Melco Products Corp. v. Public Relations Enterprises, Inc.*, 118 Misc.2d 287, 460 N.Y.S.2d 466 (N.Y.Sup.Ct.1983) (personal money orders are subject to stop payment orders). *See, e.g., State Bank of Brooten v. American*

*National Bank of Little Falls*, 266 N.W.2d 496 (Minn.1978) (bank money orders are cash equivalents not subject to stop payment orders); *Thompson Poultry, Inc. v. First National Bank of York*, 199 Neb. 8, 255 N.W.2d 856 (1977) (bank money order is accepted in advance by act of issuance); *Krom v. Chemical Bank New York Trust Co.*, 63 Misc.2d 1060, 313 N.Y.S.2d 810 (N.Y.Sup.Ct.1970); *State ex rel. Babcock v. Perkins*, 165 Ohio St. 185, 134 N.E.2d 839 (1956) (bank money orders are cash equivalents not subject to stop payment orders). *See, e.g., International Firearms Co. v. Kingston Trust Co.*, 6 N.Y.2d 406, 160 N.E.2d 656, 189 N.Y.S.2d 911 (1959) (bank draft is executed sale of credit not subject to countermand); *Manhattan Imported Cars, Inc. v. Dime Savings Bank of New York*, 70 Misc.2d 889, 335 N.Y.S.2d 356 (N.Y.Sup.1972); *Malphrus v. Home Savings Bank*, 44 Misc.2d 705, 254 N.Y.S.2d 980 (N.Y.Co.Ct.1965); *Meckler v. Highland Falls Savings & Loan Association*, 64 Misc.2d 407, 314 N.Y.S.2d 681 (N.Y.Sup. 1970) (bank drafts or tellers checks are cash equivalents not subject to stop payment orders); *but see Fulton National Bank v. Delco Corp.*, 128 Ga.App. 16, 195 S.E.2d 455 (1973); *Bruno v. Collective Federal Savings and Loan Association*, 147 N.J.Super. 115, 370 A.2d 874 (N.J.Super.Ct.App.Div.1977); *Fur Fantastic, Ltd. v. Kearns*, 104 Misc.2d 1030, 430 N.Y.S.2d 27 (N.Y.City Civ.Ct.1980) (bank drafts and teller's checks are subject to stop payment orders). This Court rejects the notion that the instrument in question should be deemed the equivalent of cash and therefore not subject to a stop payment order on the basis of unestablished commercial custom,[1] as Plaintiff seems to urge. Rather,

---

1. The Court rejects application of the cash equivalency rule to the money order in issue for several reasons. First, the Court is of the opinion that the analogy of bank drafts or teller's checks (which this instrument should more properly be termed) to cashier's checks employed by some courts to invoke the ready-made rule of cash equivalency ignores a very basic legal difference between the two instruments, that being that the drawer and drawee are one in the same on a cashier's check whereas bank drafts and teller's checks (and the money order in issue) are drawn by one bank upon another.

Secondly, Plaintiff herein has offered no evidence of custom or usage of trade in the commercial community to treat instruments such as that before the Court as cash equivalents. But even if this Court were to take judicial notice of many cases and the opinions of at least several commentators, *see e.g.* Beane, *Rights of Drawers, Banks, and Holders in Bank Checks and Other Cash Equivalents*, 19 Tulsa L.J. 612, 645–55 (1984); Lawrence, *Making Cashier's Checks and Other Bank Checks Cost Effective: A Plea for Revision of Articles 3 and 4 of the Uniform*

the Court believes it must examine the nature and characteristics of the instrument in question with reference to the applicable provisions of the Uniform Commercial Code (U.C.C.) to determine whether the instrument at issue may be subject to a stop payment order or is accepted upon issuance.

■ The money order in question is printed in the upper left hand corner with the name and address of Duncan Savings and Loan Association. Also printed at the center top portion of the instrument are the words "MONEY ORDER." In the usual place for signature of the drawer, there appears what is presumed to be the signature of an officer of Duncan Savings and Loan Association, below which is printed "Association/Drawer." The word "NON–NEGOTIABLE" is stamped across the signature. Immediately to the left of the drawer's signature, the instrument bears the words "Drawn on Federal Home Loan Bank Topeka, Kansas." Farther to the left, the instrument contains two blanks for "Sender Information," including name and address, in which are typed "McAffrey Funeral Home" and its address. The instrument directs the drawee to "Pay to the Order of First National Bank of Nocona Texas." The date and amount of the instrument also appear in the customary locations on the instrument. Thus, there are three parties to this instrument, the drawer, Defendant herein, the drawee, the Federal Home Loan Bank, Topeka, Kansas, and the payee, Plaintiff herein. The drawer and drawee are not the same entity, as is the case with a cashier's check or the usual case with bank money orders. Nor is the remitter or sender, McAffrey Funeral Home, a party to the instrument and the maker thereof, as is the usual case with personal money orders. The instrument in question is most closely akin to and might be designated a teller's check or bank draft. *See generally* Benson, *Stop Payment of Cashier's Checks and Bank Drafts Under the Uniform Commercial Code,* 2 Ohio N.U.L.Rev. 445 454–56 (1975); Lawrence, *Making Cashier's Checks and Other Bank Checks Cost Effective: A Plea for Revision of Articles 3 and 4 of the Uniform Commercial Code,* 64 Minn.L.Rev. 275, 320–30 (1980); Beane, *Rights of Drawers, Banks and Holders in Bank Checks and Other Cash Equivalents,* 19 Tulsa L.J. 612, 645 (1984); Note, *Personal Money Orders and Teller's Checks: Mavericks Under the U.C.C.,* 67 Colum.L.Rev. 524, 540 (1967). And the instrument is a "check" within the meaning of the U.C.C., U.C.C. § 3–104(2)(b); Okla.Stat. tit. 12A, § 3–104(2)(b), which would be a negotiable instrument but for the stamp "NON–NEGOTIABLE," *see* U.C.C. § 3–104(1); Okla. Stat. tit. 12A, § 3–104(1). Despite the nonnegotiable character of the instrument, however, the U.C.C. is nevertheless applicable. *See* U.C.C. § 3–103, § 3–104(3); Okla. Stat. tit. 12A, § 3–103, § 3–104(3). Since the drawer and drawee are not the same party, as is the case on a cashier's check, Defendant's signature on the instrument did not constitute "acceptance" within the meaning of U.C.C. § 3–410(1), Okla.Stat. tit. 12A, § 3–410(1). And since a check does not operate as an assignment of funds in the drawee's hands available for payment of the instrument and the drawee was not liable on the instrument until it accepted it, U.C.C. § 3–409(1); Okla.Stat.

*Commercial Code,* 64 Minn.L.Rev. 275, 333–34 (1980), that bank drafts and teller's checks are treated as the equivalent of cash in commercial circles, this Court deems it improper to adopt such custom as a rule of law when it contravenes the clear import of applicable Uniform Commercial Code provisions. It may well be that the commercial world treats bank drafts, teller's checks and money orders such as that herein as cash equivalents, but if that is the case, the custom should evolve from the law and not the other way around. Such custom and usage of bank drafts, teller's checks and money orders like that involved herein may be logically and legally justified by recognition of the dearth of defenses available to the drawer (see *infra* ) but such custom or usage may neither be predicated upon nor mandate the legally unsupportable conclusion that such instruments are not subject to stop payment orders. Benson, *Stop Payment of Cashier's Checks and Bank Drafts Under the Uniform Commercial Code,* 2 Ohio North L.Rev. 445, 454–461 (1974); Note, *Personal Money Orders and Teller's Checks: Mavericks Under the U.C.C.,* 67 Colum.L.Rev. 524, 546–48 (1967). *Accord Fulton National Bank v. Delco Corp.,* 128 Ga.App. 16, 195 S.E.2d 455 (1973).

tit. 12A, § 3–409(1), the instrument remained subject to countermand by Defendant bank as a "customer" of the drawee bank, the Federal Home Loan Bank. *See* U.C.C. § 4–104(e), Okla.Stat. tit. 12A, § 4–104(e) and U.C.C. § 4–403, Okla.Stat. tit. 12A, § 4–403. The fact that the drawee was a federal home loan bank does not make these Code provisions inapplicable. *See Fulton National Bank v. Delco Corp.,* 128 Ga.App. 16,195 S.E.2d 455 (1973); *Bruno v. Collective Federal Savings and Loan Association,* 147 N.J.Super. 115, 370 A.2d 874 (N.J.Super.Ct.App.Div.1977). A federal home loan bank is given limited authorization to engage in "banking business" by the Federal Home Loan Bank Act, 12 U.S.C. § 1431. *See* also 12 C.F.R. Parts 524, 525 and 531 (1986). Therefore, the Court is of the opinion that a federal home loan bank also comes within the purview of the Uniform Commercial Code's definition of "bank," *see* U.C.C. § 1–201(4), of which Defendant was a customer, *see* U.C.C. § 4–104(e); Okla.Stat. tit. 12A, § 4–104(e).

The undisputed facts herein demonstrate that the drawee bank received a proper and timely request to stop payment on the money order, *see* U.C.C. § 4–403(1), (2); Okla.Stat. tit. 12A, § 4–403(1), (2), and that the drawee bank did not accept the money order or pay the item. The drawee bank incurred no liability for not paying the instrument. *See* U.C.C. §§ 3–409(1) and 3–410, Okla.Stat. tit. 12A, §§ 3–409(1) and 3–410.

## II

Having determined that the stop payment order by Defendant was proper and effective, what then is Defendant drawer's liability, if any, on the instrument? The drawer remains liable to the payee, Plaintiff herein, on the instrument unless some valid defense is interposed. *Fulton National Bank v. Delco Corporation,* 128 Ga.App. 16, 195 S.E.2d 455, 457 (1973). Ordinarily, the validity of the defenses would in the first place depend on whether the payee and holder, Plaintiff herein, was a holder in due course or a mere holder. Since the defenses asserted by Defendant in this case may not be asserted against a holder in due course, *see* U.C.C. § 3–305; Okla.Stat. tit. 12A, § 3–305, the parties focus much of their argument on Plaintiff's status, Plaintiff naturally asserting that it is a holder in due course and Defendant urging that Plaintiff is a mere holder.

The Court, however, finds it unnecessary to ascertain whether Plaintiff is a holder in due course or a mere holder because of the unique nature of the defenses asserted by Defendant herein. The defenses which Defendant bank seeks to raise are those of the remitter, McAffrey Funeral Home. Thus, even assuming that a holder-in-due-course status of Plaintiff Bank does not prevent assertion of these defenses, Plaintiff will be entitled to recover from Defendant on the instrument unless Defendant may assert the defenses of its customer, the remitter. This issue is viewed as one of *jus tertii.* On this issue the Uniform Commercial Code is very clear. The only defenses or claims of third parties that an obligor on the instrument may set up are that the holder or one through whom he holds it acquired the instrument by theft or that payment to such holder would be inconsistent with the terms of a restrictive indorsement. U.C.C. § 3–306(d); Okla. Stat. tit. 12A, § 3–306(d). Any ambiguity as to whether defenses referred to in subsections (b) and (c) of Section 3–306 of the Uniform Commercial Code, Okla.Stat. tit. 12A, § 3–306, that belong to a third person not a party to the instrument may be asserted by an obligor on the instrument thereon is resolved by the Uniform Commercial Code Comment and the Oklahoma Code Comment:

> The contract of the obligor is to pay the holder of the instrument, and the claims of other persons against the holder are generally not his concern. He is not required to set up such a claim as a defense, since he usually will have no satisfactory evidence of his own on the issue; and the provision that he may not do so is intended as much for his protection as for that of the holder....

> Nothing in this section is intended to prevent the claimant from intervening in

the holder's action against the obligor or defending the action for the latter, and asserting his claim in the course of such intervention or defense. Nothing here stated is intended to prevent any interpleader, deposit in court or other available procedure under which the defendant may bring the claimant into court or be discharged without himself litigating the claim as a defense. Compare Section 3–803 on vouching in other parties alleged to be liable. Uniform Commercial Code Comment 5.

This section deals with the troublesome problem of "jus tertii,"—the right of a defendant to defend an action not upon his own defenses, but by establishing the claim of another. For illustration, an indorser [who is not the payee] attempts to prove that the plaintiff obtained the instrument from the payee by fraud or breach of trust. The states have previously been widely split as to whether the defendant may assert defenses which are not his own.... The Commercial Code establishes a simple and direct rule. *The defenses of another cannot be established unless that person himself defends the action*, except that theft of the instrument or that payment would be inconsistent with a restrictive indorsement may be established. Oklahoma Code Comment, paragraph (d) (emphasis added).

*Accord Fur Fantastic, Ltd. v. Kearns*, 120 Misc.2d 794, 467 N.Y.S.2d 499, 500 (N.Y. App.Term 1983). *See also* Benson, *Stop Payment of Cashier's Checks and Bank Drafts Under the Uniform Commercial Code*, 2 Ohio N.U.L.Rev. 445, 458–60 (1975); Note, *Personal Money Orders and Teller's Checks: Mavericks Under the U.C.C.*, 67 Colum.L.Rev. 524–546–48 (1967). *But see* Note, *Blocking Payment on a Certified, Cashier's or Bank Check*, 73 Mich.L.Rev. 424, 431–33 (1974). Thus, the defenses of failure of consideration, failure or breach of a condition precedent, payment and/or collateral estoppel or, more appropriately, claim preclusion, which belong to the remitter, McAffrey Funeral Home, may not be asserted by Defendant, even assuming that Plaintiff does not quali-

fy as a holder in due course. Defendant Bank has also raised a permissible defense of a third party, that payment of the money order would be inconsistent with the terms of a restrictive indorsement. U.C.C. § 3–306(d); Okla.Stat. tit. 12A, § 3–306(d). Defendant contends that the Letter Agreement constituted a restrictive indorsement, or to be more accurate, that the Letter Agreement and money order must be construed together as one contract and to contain a restriction that the money order not be presented for payment until the reverse participation agreement had been executed. This argument is disingenuous. The money order bears no indorsement. *See* U.C.C. §§ 3–204, 3–205 and 3–401; Okla.Stat. tit. 12A, §§ 3–204, 3–205 and 3–401. *See also Walls v. Morris Chevrolet, Inc.*, 515 P.2d 1405, (Okla.App.1973). Defendant's attempt to circumvent the Code's proscription against *jus tertii* by characterizing what may constitute a contractual defense of the remitter either failure of consideration or nonperformance of a condition precedent— as a restrictive indorsement is transparently unfounded and unavailing.

### III

Since the Uniform Commercial Code precludes the assertion of all defenses asserted by Defendant and Defendant has not denied its signature on the instrument, Defendant is liable to Plaintiff as holder of the instrument, according to its terms. *See* U.C.C. § 3–301, 3–307(1), 3–307(2) and Uniform Commercial Code Comment 1; Okla. Stat. tit. 12A, §§ 3–301, 3–307(1), 3–307(2) and Oklahoma Code Comment, (1)(a) and (b), (2). *See also Gillespie v. First National Bank*, 20 Okl. 768, 95 P. 220 (1908). Plaintiff's motion for summary judgment is granted; Defendant's cross motion is denied.