# 97 DTA 162

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL II-BAYAMON**
**PANEL I**

RECEIVED
DEC 1 9 1997
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

ALFONSO CRUZ REYES, MILDRED MARRERO VAZQUEZ Y LA
SOCIEDAD DE GANANCIALES COMPUESTA POR AMBOS
Demandantes-Apelantes

v.

WILSON MARTINEZ, POR SI Y EN REPRESENTACION DE LA SOCIEDAD DE GANANCIALES
COMPUESTA POR FULANA DE TAL; ESTADO LIBRE ASOCIADO DE P.R.; DR. JOSE LEMA MOYA
DEL DEPARTAMENTO DE INSTRUCCION DEL ESTADO LIBRE ASOCIADO DE P.R.
Demandados-Apelados

PONCE FEDERAL BANK, F.S.B.
Tercero Demandado-Apelado

Núm. KLAN-95-01320

San Juan, Puerto Rico, a 20 de agosto de 1997

Panel integrado por su Presidenta, la Jueza Ramos Buonomo,
y los Jueces Cordero y Ortiz Carrión

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los apelantes Alfonso Cruz Reyes, Mildred Marrero Vázquez y la sociedad de gananciales compuesta por ambos, solicitan la revocación de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, mediante la cual se declaró sin lugar la demanda incoada por los apelantes. A continuación reseñamos los hechos pertinentes, los cuales no están en controversia.

### I

El 9 de marzo de 1990 el Departamento de Educación giró el cheque número 166312143 del apelado Sr. Wilson Martínez por la suma de $5,833.98. Sin embargo, ese mismo día, el Departamento de Educación ordenó la suspensión de pago *("stop payment")* del referido cheque al Banco Gubernamental de Fomento, al percatarse que el pago era uno duplicado.

El 10 de marzo de 1990, el Sr. Martínez acudió a la sucursal del Ponce Federal Bank en Bayamón para cambiar el cheque. El apelante Alfonso Cruz Reyes se desempeñaba como Gerente Auxiliar de dicha sucursal para esa fecha. El Sr. Cruz autorizó el pago del cheque presentado para cambio por el Sr. Martínez, una alegada violación a las normas del referido banco que rigen la autorización del pago de cheques.

El 12 de marzo de 1990 el Ponce Federal Bank presentó el cheque para cobro ante el Banco Gubernamental de Fomento, negándose éste a pagarlo por existir una orden de suspensión de pago. Posteriormente en esa misma fecha, el Sr. Cruz adquirió del Ponce Federal Bank el cheque para no perder su empleo.

Así las cosas, el Sr. Cruz presentó demanda en cobro de dinero, en la cual reclama a los apelados, Estado Libre Asociado (en adelante E.L.A.) y Wilson Martínez, la suma de $5,833.98. Luego de varios incidentes procesales, se trajo como apelado al Banco Gubernamental de Fomento y como tercero demandado-apelado al Ponce Federal Bank.

El 31 de marzo de 1994, mediante sentencia sumaria parcial *nunc pro tunc,* el Tribunal de Primera Instancia desestimó la reclamación contra el Banco Gubernamental de Fomento con perjuicio. Posteriormente, el 26 de octubre de 1995, el foro apelado dictó sentencia desestimando la demanda incoada. La reclamación en contra del Sr. Wilson Martínez no prosperó y el tribunal no adquirió jurisdicción sobre su persona.

Inconforme con dicha decisión, los apelantes presentaron el presente recurso de apelación ante este Tribunal, imputándole en síntesis al foro apelado la comisión del siguiente error:

*"Erró el Tribunal de Instancia [s[i] al determinar únicamente que el co-demandante Alfonso Cruz no era tenedor de buena fe al amparo de la sección 92 de la Ley Uniforme de Instrumentos Negociables, 19 L.P.R.A. sec. 92, del instrumento negociable expedido por el Estado Libre Asociado de Puerto Rico a que se refiere la demanda, cuando debió determinar que aun cuando el demandante Alfonso Cruz no era un tenedor de buena fe del instrumento negociable, le cobijaba la sección 98."*

## II

Debido a que los apelantes admiten que el Sr. Cruz no es un tenedor de buena fe, la controversia se circunscribe a determinar si aplica a los hechos de este caso el Art. 411 del Código de Comercio, Ley Uniforme de Instrumentos Negociables, ■ y cómo protege esta disposición a los apelantes. Dicha disposición lee así:

### *"Materia de defensa de documento negociable*

*En manos de un tenedor que no sea tenedor de buena fe, el documento negociable está sujeto a la misma materia de defensa que el documento que no fuere negociable. Pero un tenedor que derive su derecho del de un tenedor de buena fe, y que no haya sido parte en fraude o ilegalidad alguna que afecte al documento, tendrá todos los de dicho tenedor anterior en lo que respecta a todas las partes que hayan precedido al último."*

19 L.P.R.A. sec. 98. ■

De acuerdo con lo dispuesto en este artículo, no siendo en este caso un tenedor de buena fe el apelante, si éste adquirió el cheque de un tenedor que no sea tenedor de buena fe, *"el documento negociable está sujeto a la misma materia de defensa que el documento que no fuere negociable",* pero si lo adquirió de un tenedor de buena fe y no ha sido parte en fraude o ilegalidad alguna que afecte al documento, *"tendrá todos los derechos de dicho tenedor anterior en lo que respecta a todas las partes que hayan precedido al último".* Se ha dicho que la razón para la existencia de dicha regla es que si no fuera así, cualquier persona que tuviera una defensa personal en un documento negociable podría arruinar el mercado del documento haciendo públicas las defensas personales que tuviere respecto al documento y ninguna persona se arriesgaría a comprar un documento ante tales circunstancias por temor a no cualificar como tenedor de buena fe. B. Santiago Romero, *op. cit.,* pág. 183.

El Tribunal Supremo resolvió en *Cintrón v. Domínguez,* 60 D.P.R. 477 (1942), interpretando el referido Art. 411 del Código de Comercio, que un apelante, que no sea tenedor de buena fe por haber adquirido un pagaré después de su vencimiento, está sujeto a las mismas defensas que los apelados podían levantar en cuanto a su acreedor original.

De otro lado, en *Lafont v. Bird,* 57 D.P.R. 142 (1940), el Tribunal Supremo resolvió aplicando el referido Art. 411, que un apelante que no es tenedor de buena fe por haber obtenido un pagaré después de estar vencido y no por causa onerosa, contra él puede interponerse la defensa de pago de la obligación, ya que la persona de quien obtuvo el documento tampoco era tenedora de buena fe.

En *Caguas Company, Inc. v. López,* 59 D.P.R. 264 (1941), nuestro más alto foro judicial también interpretó el Art. 411. Resolvió el Tribunal Supremo que aunque la apelante no era tenedora de buena fe, por haber adquirido un pagaré vencido, tiene todos los derechos de un tenedor de buena fe, ya que su antecesor en el título del pagaré fue tenedor de buena fe y que por consiguiente, aunque el apelado tuviera defensas que alegar contra el tenedor original del pagaré, no puede interponerlas contra la

apelante.

El tenedor que reclame tener los mismos derechos de un tenedor de buena fe por haber adquirido el documento de éste, deberá evidenciar con preponderancia de la prueba que el tenedor del documento que lo precedió era uno de buena fe. *Northside Bldg. & Invest. Co. v. Finance Co. of America*, 166 S.E.2d 608, 611 (1969). Esta regla aplica aun cuando dicho tenedor tenía aviso o conocimiento de defectos en el documento. R. Anderson, Uniform Commercial Code, 3ra Ed., New York, The Lawyers Cooperative, 1984, Vol. 5, pág. 412, sec. 3-201:23. El tribunal inferior debe hacer determinaciones de hechos estableciendo si el apelante es o no un tenedor de buena fe, además de la defensas disponibles contra éste. *R. Biggs v. Stewart*, 361 A.2d 159, 164 (1976). También el tribunal deberá resolver si el apelante observó las normas comerciales razonables cuando se cambia en efectivo un cheque y de esta manera sea un tenedor de buena fe. *Swiss Baco Skyline Logging, Inc. v. Haliewicz*, 567 P.2d 1141, 1148 (1977).

El cheque constituye un instrumento negociable mediante cual el librador da una orden incondicional al banco librado para que este último pague a su presentación cierta suma dinero a la orden o al portador. Art. 538 del Código Comercio de 1932, 19 L.P.R.A. sec. 362; *A.E.E. v. Las Américas Trust Co., supra*, pág. 839. En cuanto a los derechos de un tenedor de un cheque, el tratadista Santiago Romero, expresó lo siguiente:

*"El tenedor de un cheque no puede forzar al banco librado a pagar el mismo, a menos que el banco lo haya certificado. Si el banco librado rehúsa pagar el cheque, **el tenedor puede recurrir únicamente contra el librador y los endosantes,** ya que la función del cheque no constituye una cesión de intereses. Considerando la naturaleza del contrato entre el banco y el depositante, el tenedor del cheque no posee interés alguno en dicho contrato. El banco únicamente responde ante el depositante con quien acordó recibir sus depósitos de hacer honor a sus cheques y de rendirle cuenta. Si el banco no paga o incurre en incumplimiento del contrato con el depositante, su responsabilidad es hacia él y no hacia el tenedor del cheque."* (Enfasis nuestro.) B. Santiago Romero, *op. cit.*, pág. 349.

Dispone así el Art. 437 del Código de Comercio:

*"Con sujeción a las disposiciones de este título, **cuando no se hace honor a un documento por falta de pago, el tenedor adquiere inmediatamente el derecho de recurrir contra todos los responsables, en segundo término,** del pago de dicho documento."* (Enfasis nuestro.)

19 L.P.R.A. sec. 145.

Por su parte, dispone así el Art. 504 del Código de Comercio:

*"Cuando no se hace honor a una letra por falta de aceptación, el tenedor adquiere inmediatamente el derecho de recurrir **contra el librador** y los endosantes, y no es necesario presentarla al pago."*

19 L P R A. sec. 269.

Primero, el tenedor tiene derecho a reclamar el pago a la persona responsable del pago del documento *"en primer término"*. Art. 423 del Código de Comercio, 19 L.P.R.A. sec. 131; B. Santiago Romero, op cit, pág 164. La persona responsable en primer término, en el caso de un cheque lo es el librado, **una vez éste acepte el mismo.** B. Santiago Romero, *op. cit.* Pero si éste no pagara, el tenedor podrá demandar a las personas responsables en segundo término. Art. 145 del Código de Comercio, 19 L.P.R.A. sec. 437. Las personas responsables del pago de un cheque *"en segundo término"* lo son el librador y los endosantes. B. Santiago Romero, *op. cit.* El tenedor de un documento puede demandar a todas las partes conjuntamente, ya sean estas partes responsables en *"primer término"* o en *"segundo término"* Id., pág. 165.

### III
No existiendo controversia alguna de que el apelante, señor Cruz, no es un tenedor de buena fe, por

haberse convertido en tenedor del mismo teniendo conocimiento de que su pago había sido rehusado previamente; Art. 405 del Código de Comercio, 19 L.P.R.A. sec. 92, debemos decidir si el Ponce Federal Bank era un tenedor de buena fe; si no fuera así, *"el documento negociable está sujeto a la misma materia de defensa que el documento que no fuere negociable"*. Es decir, contra el apelante prosperaría la defensa del E.L.A. de que dio orden de suspensión de pago al banco librado, ya que era un pago duplicado al tomador del documento. De lo contrario, es decir, si Ponce Federal Bank fue un tenedor de buena fe, la reclamación del apelante está sujeta a las mismas defensas que el apelado, Estado Libre Asociado de Puerto Rico, podía levantar en cuanto a su antecesor, el Ponce Federal Bank.

Según el Art. 405 del Código de Comercio, 19 L.P.R.A. sec. 92, es tenedor de buena fe el que ha tomado el documento antes de su vencimiento, sin tener conocimiento de que su aceptación o pago había sido rehusado previamente, de buena fe, por causa onerosa, sin tener conocimiento de defecto alguno en el documento, o en el derecho de la persona de quien lo adquirió, y siempre y cuando el documento esté completo y sea regular en su apariencia.

En cuanto a la buena fe del Ponce Federal Bank y la ausencia de conocimiento de defecto o defensa alguna, las alegaciones de las partes son que dicho banco adquirió el cheque en el curso ordinario de los negocios y nadie ha alegado que dicho banco tuviese conocimiento de defecto alguno. No existe nada en el récord que nos haga indicar que el Ponce Federal Bank no fuera un tenedor de buena fe. Concluimos, por lo tanto, que el Ponce Federal Bank era un tenedor de buena fe. Siendo esto así, la reclamación del apelante está sujeta a las mismas defensas que el apelado, Estado Libre Asociado de Puerto Rico, podía levantar en cuanto a su antecesor, el Ponce Federal Bank. Por lo tanto, el apelante tiene los mismos derechos que los de un tenedor de buena fe bajo el Art. 411 del Código de Comercio, 19 L.P.R.A. sec. 98.

La defensa levantada por el apelado E.L.A. es que éste, como librador del cheque, dio orden de suspensión de pago al banco librado, Banco Gubernamental de Fomento, por haberse hecho por error un pago duplicado, antes de que dicho banco hubiera pagado o certificado el cheque. Habría entonces que resolver si dicha defensa puede interponerse contra un tenedor que adquirió el documento de un tenedor de buena fe.

## IV

La cuenta corriente se caracteriza como un contrato de préstamo mediante el cual el banco queda obligado a pagar o restituir lo que se le ha entregado en calidad de préstamo, según la orden de su cliente. B. Santiago Romero, *op. cit.*, pág. 841. Las obligaciones de los bancos para con su depositantes surgen de la relación contractual existente entre ellos. *P.R. Tobacco Mkt. Ass'n. v. P.R. & Amer. Ins.*, 100 D.P.R. 387, 397 (1972). El banco le es responsable a su depositante cuando hace pagos en violación de las instrucciones de éste. *Id.*

*"En la práctica, el vínculo entre el librador y su banco no surge en el momento en que se libra el cheque. Por lo general, éstos han quedado previamente vinculados mediante el establecimiento de una cuenta corriente contra cuyos fondos se hacen efectivas las órdenes de pago del librador."*

*A.E.E. v. Las Américas Trust Co., supra.*

El librador de un cheque personal tiene el derecho a emitir una orden de suspensión de pago de su cheque al banco librado, en cualquier momento antes de su pago. *Diemar & Kirk Company v. Smart Styles. Inc.*, 134 S.E.2d 134, 137 (1964); *Olds Motor Works v. First State Savings Bank of Morenci*, 241 N.W. 813 (1932); G. Wallach, *Negotiable Instruments: The Bank Customer's Ability to Prevent Payment on Various Forms of Checks*, 11 Ind. LR. 579 (1978). Sin embargo, este derecho de suspensión de pago no destruye la obligación del librador de honrar su obligación contractual. *First Nat. Bank of Nocona v. Duncan S. & L. Ass'n*, 656 F.Supp. 358, 365 (1987); *Bank of Wyandotte v. D. Woodrow*, 394 F.Supp. 550, 555 (1975); *Diemar Kirk Company v. Smart Styles, Inc., supra*; H. J. Bailey, *Brady on Bank Checks - The Law of Bank Checks*, 7ma Ed., Boston, Warren, Gorham & Lamont, 1992, págs. 26-61, sec. 26.20. El hecho de que el librador ha ordenado la suspensión de pago del cheque no es una defensa cuando el librador no tiene una defensa válida oponible contra el apelante. *Sawgrass Builders, Inc. v. Realty Cooperative, Inc.*, 323 S.E.2d 243, 244 (1984). El librador

ha prometido que él pagará el documento a todo tenedor, sujeto únicamente a que se le de aviso que no se ha hecho honor al documento. *Id.*; Art. 414 del Código de Comercio, 19 L.P.R.A. sec. 116. Sin embargo, si el banco no le hace honor al documento siguiendo la directriz de contraorden de pago de su cliente, entonces no será necesario darle tal aviso al librador. Art. 467 del Código de Comercio, 19 L.P.R.A. sec. 186 (5); *F. Harik v. Harik*, 861 F.2d 139, 141-142 (1988).

El otorgante renuncia a ciertas defensas cuando el documento lo recibe un tenedor de buena fe. B. Santiago Romero, *op. cit.*, pág. 166. Las defensas que se renuncian en esta situación son las conocidas como *"personales"* que son las que pueden oponerse entre las partes originales contratantes o que no son oponibles contra tenedor de buena fe, *Id.*, págs. 166 y 185; o contra un tenedor que haya adquirido los derechos de un tenedor de buena fe por haber adquirido el documento de éste. R. Anderson, *op. cit.*, Vol. 6, pág. 43, sec. 3-305:36. Las defensas que no se renuncian por el otorgante del documento son las *"reales"* o *"absolutas"*, las cuales surgen cuando se ataca la validez del documento mismo o cuando lo requiere el orden público y son oponibles contra cualquier tenedor que adquiera el documento hasta el tenedor de buena fe. B. Santiago Romero, *op. cit.*, págs. 166 y 185.

Se ha dicho que la ley del estado en el cual se negoció el documento determina la extensión de cuáles defensas pueden oponerse contra el tenedor del documento. *Olsen-Frankman Livestock Marketing Service, Inc. v. Citizens Nat. Bank*, 605 F.2d 1082, 1085 (1979).

Se ha sostenido que el peso de probar la existencia de una defensa válida y oponible al tenedor del documento, al cual se le dio contraorden de pago por parte del librador, recae sobre éste. *First Federal Savings and Loan v. Chrysler Credit Corporation*, 981 F.2d 127, 133 (1992). También se ha sostenido que el *"collecting bank"* que ha aceptado el cheque depositado cualifica como un tenedor de buena fe y puede recobrar del librador después que éste ha dado contraorden de pago. H. J. Bailey, *op. cit.*

No es una defensa oponible al tenedor de buena fe el que el librador alegue haber incurrido en un error unilateral en la cantidad del cheque que le entregó al acreedor (tomador), particularmente cuando el error fue causado únicamente por la propia negligencia del librador. *Hyman v. Horwitz*, 252 S.E.2d 74, 77 (1979). También se ha establecido que tampoco es una defensa oponible contra el tenedor de buena fe el que el deudor ya le haya pagado al tomador del instrumento negociable. *Taylor v. Roeder*, 360 S.E.2d 191, 193-194 (1987); *First Nat. Bank of Nocona v. Duncan S. & L. Assn.*, *supra*, pág. 366.

## V

Aunque el E.L.A. tenía derecho a recobrar un pago duplicado hecho por error, bajo las circunstancias del presente caso, dicha parte no puede transferirle al apelante las consecuencias de su propio error. El problema del doble pago surgió del propio error del E.L.A. y el apelante, habiendo adquirido el cheque en controversia de un tenedor de buena fe, no le es oponible la defensa de la duplicación en el pago siendo ésta solamente oponible ante el tomador del documento, es decir, el Sr. Martínez. *Hebel v. Ebersole*, 543 F.2d 14, 18 (1976); *Northside Bank of Tampa v. Investors Acceptance Corporation*, 278 F.Supp. 191, 192 (1968). No podemos olvidar que *"[el] deudor del documento negociable al firmar el documento manifiesta, aparte de su voluntad de obligarse internamente con su primer acreedor, su voluntad inequívoca de obligarse, en público y para el público y, por lo tanto, admite que su obligación, puesta en la pendiente del torrente circulatorio comercial, puede hasta detenerse en el último tenedor que la hace efectiva."* B. Santiago Romero, *op. cit.*, pág. 8.

Por lo tanto, la demandada E.L.A. le es responsable al apelante como tenedor del cheque, de acuerdo con sus términos.

## VI

Por los fundamentos antes expuestos, se revoca la sentencia apelada.

El Juez Ortiz Carrión emitió voto concurrente por escrito.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

1. No se nos ha indicado en qué consistió dicha violación a las normas del banco, ni tampoco se nos ha indicado cuáles son las posibles consecuencias, si alguna, que podría producir dicha violación.

2. La Ley Uniforme de Instrumentos Negociables a la que estamos haciendo referencia fue derogada por la Ley Núm. 208 de 17 de agosto de 1995. Sin embargo, los hechos acaecidos en este caso ocurrieron durante la vigencia de la ley de 1930. La Ley de Instrumentos Negociables de 1930 estaba basada en la ley inglesa conocida como el *"Bill Of Exhange Act"* de 1882 y la ley norteamericana, *"Uniform Negotiable Instrument Law"* de 1896. *St. Paul Fire & Marine v. Caguas Fed. Savs.*, 121 D.P.R. 761, 767 (1988); B. Santiago Romero, *Tratado de Instrumentos Negociables*, 2da Ed., Editorial Universitaria, Río Piedras, 1981, pág. 21. Aunque el Tribunal Supremo de Puerto Rico ha expresado que el Código Uniforme de Comercio de Estados Unidos no rige aquí en Puerto Rico, *Acevedo v. Citibank*, 115 D.P.R. 768, 769 (1984), no obstante, ha expresado también que dichas disposiciones son ilustrativas. *A.E.E. v. Las Américas Trust Co.*, 123 D.P.R. 834, 851 (1989). Es por esto que en ocasiones recurriremos a lo expresado por otras jurisdicciones en cuanto a este asunto.

3. La sección equivalente a este artículo en el *"Uniform Commercial Code"* es la sec. 3-201 que en lo aquí pertinente lee así:

*"Transfer: Right to Endorsement.*

*(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder has notice of a defense or claim against it cannot improve his position by taking from a later holder in due course."*

---

## VOTO CONCURRENTE DEL JUEZ DE
## APELACIONES SR. ORTIZ CARRION — 97 DTA 162

San Juan, Puerto Rico, a 20 de agosto de 1997

Según surge de las alegaciones de la demanda, el Ponce Federal Bank era tenedor de buena fe, pues al hacer efectivo el cheque no tenía conocimiento de la suspensión de pago. Por otra parte, el señor Alfonso Cruz Reyes obtuvo el cheque mediante una cesión de crédito subrogándose en la posición del Ponce Federal Bank frente al Estado Libre Asociado de Puerto Rico.

**RAFAEL ORTIZ CARRION**
**Juez de Apelaciones**