LAWRENCE BERLER, Doing Business as VICTORIA GAL-
LERIES, Respondent, v BARCLAYS BANK OF NEW YORK,
Appellant.

First Department, August 20, 1981

APPEARANCES OF COUNSEL

*David B. Newman* of counsel *(W. Cullen MacDonald* with
him on the brief; *Hawkins, Delafield & Wood*, attorneys),
for appellant.

*Lawrence Berler*, respondent *pro se.*

*John Leferovich, Jr.*, for New York State Bankers Asso-
ciation, *amicus curiae.*

### OPINION OF THE COURT

FEIN, J.

The question is which of these parties, victims of a con-
fidence game, should bear the loss. On June 5, 1980 a woman
purporting to be Diane Antoniello purchased three per-

sonal money orders at defendant bank in the amounts of $200, $250 and $250, with the payee lines left blank. The purchaser had no account at defendant bank. One week later she returned to the bank and filled out "lost personal money order affidavits" requesting stoppage of payment on each of the orders, asserting that she had made them payable to "J. C. Penny's" but had inadvertently thrown them away. The affiant listed her address as 77-20 250th Street, Bellrose, New York 11426. Defendant stopped payment on the money orders, and on or about July 11 a refund was made by issuing three replacement personal money orders, this time payable to Antoniello's order. The next day the two originally issued $250 personal money orders, payment on which had by this time been stopped, were negotiated to plaintiff at his Manhattan art gallery in purchase of $500 worth of merchandise. The address noted underneath Antoniello's signature on the money orders was 205-24 34th Avenue, Bayside, which matched a driver's license shown to plaintiff as identification. These money orders were dishonored with the notation "Payment Stopped", when presented for payment. This action ensued in Small Claims Court.

The real Diane Antoniello, who lives at the Bayside address in Queens, appeared at the trial. She testified that she had lost her driver's license in 1978, that she had never shopped in plaintiff's store, that she had not purchased the personal money orders in question and indeed had never conducted any business at defendant's bank. She indicated that whoever had possession of her driver's license had been forging her signature for the last two years.

The Small Claims Court Judge granted plaintiff judgment for $500 on the premise that in order for a bank to have the right to rely on a stop payment order on a personal money order it issues, the money order should be imprinted with a legend indicating that payment could be stopped by the purchaser. That ruling was contrary to this court's holding in *Garden Check Cashing Serv. v First Nat. City Bank* (25 AD2d 137, affd 18 NY2d 941) that a personal money order sold by a bank to a purchaser is no different from a personal check furnished by the bank for use by its checking account customers. The instruments are

the same. Neither one is an obligation of the bank inasmuch as no signature of any bank official appears anywhere thereon. Each is the personal obligation of the maker of the instrument, i.e., the purchaser of the money order or the drawer of the check. The drawee bank's obligation does not arise until the instrument has been accepted for payment (Uniform Commercial Code, §§ 3-409, 3-410). Until that time the maker of the instrument, i.e., that party who has obligated himself by signature thereon, has an absolute right to order the drawee (or issuing) bank to stop payment in accordance with the procedure set forth in section 4-403 of the Uniform Commercial Code *(Garden Check Cashing Serv. v First Nat. City Bank, supra; Krom v Chemical Bank N. Y. Trust Co.*, 38 AD2d 871). Official Comment No. 4 to section 4-403 of the Uniform Commercial Code indicates that the right to stop payment is not limited to the drawer of a check, but rather extends to the maker of any instrument that will become payable by a bank.

As the cited cases hold, a personal money order of the type here involved is not a cashier's check or a traveler's check. A cashier's check bears the signature of an official of the bank, thus becoming an obligation of the bank. A traveler's check bears the signature of its issuer, thus becoming the issuer's obligation. A personal money order bears only the signature of its maker whose obligation it is. In such case the maker has a right to stop payment.

Appellate Term thus correctly reversed the judgment of Civil Court. However, it improperly remanded the case for new trial. The basis of the remand was the possible proof of negligence of the bank in failing to exercise due caution in determining the *bona fides* of "Antoniello" when she submitted her affidavits of loss. Appellate Term apparently reached this conclusion on the assumption that the real Antoniello was listed in the Queens telephone directory, and thus was just a phone call away for purposes of verification. This assumption was based on the claim that just as plaintiff's employee was able to reach the real Antoniello, so defendant could also have been able to do so. This is a false assumption. The real Antoniello has not had a listing in the Queens telephone directory during the period in question. The record is clear that plaintiff acquired Ms.

Antoniello's telephone number by sending a relative of his to locate her at the Queens address. There was no negligence.

More to the point, there could be no negligence because negligence implies a duty breached. Defendant bank owed plaintiff no duty. The bank's duty was to its customer, imposter though she may have been. She purchased the money order. She had a right to stop its payment. Defendant was acting strictly in accordance with its statutory rights and obligations. Indeed, Comment No. 8 to section 4-403 of the Uniform Commercial Code provides: "A payment in violation of an effective direction to stop payment is an improper payment, even though it is made by mistake or inadvertence." A bank is liable at its peril to obey a stop order *(American Defense Soc. v Sherman Nat. Bank of N. Y.,* 225 NY 506).

Personal money orders have been described as the poor man's one-shot checking account. They are personal checks, not banker's or cashier's or traveler's checks. Although they have a more formal appearance than the usual personal check, such appearance does not change their character or the rights and obligations of those who issue and receive them. On their face they are plainly signed by the drawer, not by the bank. They clearly direct the bank to pay the payee. They are not promises by the bank that it will pay. (See, generally, Personal Money Orders and Teller's Checks: Mavericks Under the UCC, 67 Col L Rev 524, 525-540.)

Order, Supreme Court, Appellate Term, First Department, entered January 16, 1981, reversing a judgment of Civil Court of the City of New York (Small Claims Part), New York County (NASON, J.), entered August 21, 1980, which had awarded plaintiff $500 after trial, and remanding for a new trial, should be reversed, on the law and the facts, and the complaint dismissed, without costs.

SANDLER, J. P., CARRO and BLOOM, JJ., concur.

Order, Supreme Court, Appellate Term, First Department, entered on January 16, 1981, reversed, on the law and the facts, and the complaint dismissed, without costs and without disbursements.