■ ADAM INTERNATIONAL TRADING LTD. et al., Respondents-Appellants, v MANUFACTURERS HANOVER TRUST COMPANY, Appellant-Respondent.—Judgment of the Supreme Court, New York County (Burton Sherman, J.), entered March 17, 1988, which awarded damages in favor of plaintiffs and against defendant, is unanimously reversed, on the law, and the action dismissed, without costs.

The action was brought by two merchants who, in separate transactions, accepted personal money orders (PMOs) as payment for merchandise sold to customers. The PMOs were deposited by plaintiffs and presented to defendant bank for payment, but defendant refused to pay on the ground that it did not issue the PMOs. At trial, defendant explained that the instruments presented for payment were part of a quantity of blank PMOs which it had discovered stolen from its warehouse approximately 15 months prior to plaintiffs' transactions with the apparent thieves.

PMOs, considered a novelty until fairly recently *(Garden Check Cashing Serv. v First Natl. City Bank,* 25 AD2d 137, *affd* 18 NY2d 941), have been described as the poor man's one-shot checking account *(Berler v Barclays Bank,* 82 AD2d 437, 440, *lv dismissed* 55 NY2d 645). The purchaser of such an instrument deposits a sum of money with a bank and receives in return a check bearing a stamp showing the amount of the deposit, or a series of checks bearing stamps that aggregate the deposit, but otherwise left blank. The names of both the drawer and payee are to be filled in when the drawer signs the check and delivers it to his payee, whereupon it becomes a negotiable instrument as would an ordinary personal check. Like a personal check, a PMO is the personal obligation of the drawer, with no liability of the drawee bank arising thereon

until there is an acceptance or certification. Merchants are deemed to understand that a PMO is not a primary obligation of the bank by reason of the fact that no signature of a bank official appears on the face thereof, since without a signature there can be no liability on an instrument (UCC 3-401 [1]; *see generally, Garden Check Cashing Serv. v First Natl. City Bank, supra).*

Apparently recognizing as much, the complaint seeks to hold defendant liable not on the instruments themselves, but in tort, on the theory that defendant was negligent in failing to safeguard the PMOs against theft, and after discovering the theft, in "failing to alert the general public of the fact that unauthorized or bogus money orders were in circulation". Denying motions by defendant for judgment as a matter of law, the trial court submitted the case to the jury on this theory of negligence. The jury returned a verdict finding defendant 75% responsible for plaintiffs' losses, measured in the total amount of the dishonored PMOs, and plaintiffs 25% responsible.

Defendant argues on appeal that there can be no liability in negligence absent a duty of care owing to the person claiming damages, and that as a matter of law no duty was owed here by defendant to plaintiffs to safeguard the PMOs against theft. We do not go that far *(but see, Purdy v Public Adm'r of County of Westchester,* 72 NY2d 1, 8 ["In the ordinary circumstance, common law in the State of New York does not impose a duty to control the conduct of third persons to prevent them from causing injury to others"]), and prefer instead to assume that defendant owed a duty, if not to the public-at-large then to the mercantile community, to take reasonable precautions to safeguard a large quantity of blank forms designed to circulate as negotiable instruments once signed and delivered to a payee. Even so, we reverse and dismiss the action for failure to prove breach of the duty so owing. The record is simply barren of evidence bearing upon the standard of care ordinarily exercised by banks to safeguard PMOs against theft, let alone that defendant failed to meet that standard, whatever it might be. Indeed, on appeal, the only theory of fault plaintiffs actually articulate is res ipsa loquitur, i.e., that the theft of the PMOs itself establishes defendant's carelessness in safeguarding them, a theory we reject as not in accord with experience or common sense *(cf., Brogan Cadillac-Oldsmobile Corp. v Central Jersey Bank & Trust Co.,* 190 NJ Super 500, 501, 464 A2d 1141, 1142 [with respect to its own business

checks, a bank "should be held to no higher standard of care then any other business entity whose checks are stolen"]).

However, with respect to whether defendant was under a duty to publicize the theft of the PMOs once discovered, we hold as a matter of law that it was not. The reason plaintiffs seem to give why defendant should be expected to have gone to such lengths is that "[t]he general public, through smart publicity and advertising by the banks, is under the notion that PMOs are as good as cash". Here again, plaintiffs' argument is without support in the record. PMOs are not traveler's, teller's, or cashier's checks, which are promoted by banks as cash equivalents, and which, some courts have held, must therefore be safeguarded by banks as they would safeguard cash so as to protect innocent third persons against the risk of forgery *(Savemart, Inc. v Bowery Sav. Bank,* 117 Misc 2d 947, *affd* 99 AD2d 1034; *Michaeli v Greater N. Y. Sav. Bank,* 129 Misc 2d 1096, *affg* 121 Misc 2d 840; *First Natl. City Bank v American Broadcasting Co.,* 68 Misc 2d 861). PMOs, rather, are legally indistinguishable from ordinary personal checks, and it was not the fault of defendant that plaintiffs did not understand this. There was no "smart publicity and advertising" by defendant or other banks that PMOs are as good as cash; hence, there was no correlative duty on defendant to undertake a publicity campaign of undefined intensity and duration to minimize the somewhat increased risk of forgery arising out of the theft. The risk was too small, and the relationship between defendant and the community of merchants to whom the stolen PMOs might be presented too tenuous, to justify the imposition of such a duty. After the theft, defendant could reasonably assume that merchants would treat the stolen PMOs as they would treat ordinary checks—that they would be wary of their customers, call defendant to verify the validity of the PMOs, or not part with their merchandise until the PMOs cleared.

Nor does it avail plaintiffs to argue that the trial court committed error in refusing to instruct the jury that plaintiffs were holders in due course of the PMOs, their status as such being irrelevant given that the action is not on the PMOs themselves but in tort. And even if the action were on the PMOs, defendant, being a mere drawee of what are the legal equivalent of unaccepted checks, would not be liable even to a holder in due course (UCC 3-409 [1]). Here again, PMOs must be distinguished from traveler's and teller's checks which, because signed by a bank officer, must be paid by the bank when presented by a holder in due course *(First Natl. City*

*Bank v American Broadcasting Co.*, 68 Misc 2d 861, *supra).* Concur—Sullivan, J. P., Asch, Milonas, Rosenberger and Wallach, JJ.